In re PROPOSED INITIATIVE CON-
CERNING "STATE PERSONNEL
SYSTEM".

Colorado Association of Public Employ-
ees, Jack Ashley, Richard McKee and
Bruce Stark, Opponents,

and

Claire Traylor, Proponent,

and

Natalie Meyer, Douglas G. Brown and
Duane Woodard, Statutory Board.

No. 84SA269.

Supreme Court of Colorado,
En Banc.

July 2, 1984.
Rehearing Denied July 16, 1984.

Brauer & Buescher, P.C., Walter C. Brauer III, Denver, for opponents.

Haddon, Morgan & Foreman, P.C., Harold A. Haddon, Kenneth S. Canfield, Denver, for proponent.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Ruthanne Gartland, First Asst. Atty. Gen., Denver, for Statutory Board.

KIRSHBAUM, Justice.

Petitioners, Colorado Association of Public Employees, Jack Ashley, Richard McKee and Bruce Stark (opponents), challenge the title, ballot title and submission clause and summary prepared by the Initiative Title Setting Review Board (board) in connection with a proposed initiative to amend the Colorado Constitution with respect to the state personnel system.[1] Asserting that several portions of the documents prepared by the board are misleading, ambiguous or incorrect, the opponents contend that the board erred in overruling their motion for rehearing. We affirm the board's action.

The proposed amendment is set forth in its entirety in Appendix A of this opinion. In general, the proposal would alter the present constitutional framework respecting the hiring and discharge of personnel employed in state government by replacing Sections 13 and 14 of Article XII of the constitution with a new Section 13. The summary thereof, as prepared by the board, is set forth in Appendix B. The title drafted by the board states as follows:

AN AMENDMENT TO ARTICLE XII OF THE STATE CONSTITUTION CONCERNING THE STATE PERSONNEL SYSTEM: REQUIRING EXEMPT POSITIONS IN THE STATE PERSONNEL SYSTEM TO BE SPECIFIED IN LAW

---

1. This action has been filed pursuant to § 1–40– 102(3), 1B C.R.S. (1980).

AND REVISIONS TO SUCH EXEMPTIONS TO BE MADE BY BILL ADOPTED BY TWO–THIRDS VOTE OF THE GENERAL ASSEMBLY AND APPROVAL OF THE GOVERNOR; TRANSFERRING RULEMAKING POWER FROM THE STATE PERSONNEL BOARD TO THE PERSONNEL DIRECTOR; DIRECTING THE GENERAL ASSEMBLY TO PROVIDE FOR THE TERMS OF OFFICE, DUTIES, AND REMOVAL OF MEMBERS OF THE BOARD; MAKING THE HEADS OF PRINCIPAL DEPARTMENTS THE APPOINTING AUTHORITIES FOR EMPLOYEES IN THEIR DEPARTMENTS; AND ELIMINATING RESIDENCY REQUIREMENTS FOR APPOINTEES, TEMPORARY EMPLOYMENT PROVISIONS, AND THE REQUIREMENT THAT AN APPOINTEE TO A POSITION BE ONE OF THE THREE HIGHEST RANKING PERSONS ON AN ELIGIBLE LIST.

The ballot title and submission clause drafted by the board states as follows:

SHALL THERE BE AN AMENDMENT TO ARTICLE XII OF THE STATE CONSTITUTION CONCERNING THE STATE PERSONNEL SYSTEM: REQUIRING EXEMPT POSITIONS IN THE STATE PERSONNEL SYSTEM TO BE SPECIFIED IN LAW AND REVISIONS TO SUCH EXEMPTIONS TO BE MADE BY BILL ADOPTED BY TWO–THIRDS VOTE OF THE GENERAL ASSEMBLY AND APPROVAL OF THE GOVERNOR; TRANSFERRING RULEMAKING POWER FROM THE STATE PERSONNEL BOARD TO THE PERSONNEL DIRECTOR; DIRECTING THE GENERAL ASSEMBLY TO PROVIDE FOR THE TERMS OF OFFICE, DUTIES, AND REMOVAL OF MEMBERS OF THE BOARD; MAKING THE HEADS OF PRINCIPAL DEPARTMENTS THE APPOINTING AUTHORITIES FOR EMPLOYEES IN THEIR DEPARTMENTS; AND ELIMINATING RESIDENCY REQUIREMENTS FOR APPOINTEES, TEMPORARY EMPLOYMENT PROVISIONS, AND THE REQUIREMENT THAT AN APPOINTEE TO A POSITION BE ONE OF THE THREE HIGHEST RANKING PERSONS ON AN ELIGIBLE LIST?

 The standards governing appeals of final action by the board are not difficult to state, although frequently difficult to apply. The General Assembly has delegated to this court the duty to ensure that all documents drafted by the board "fairly and succinctly advise the voters what is being submitted, so that in the haste of an election the voter will not be misled into voting for or against a proposition by reason of the words employed." *Dye v. Baker*, 143 Colo. 458, 460, 354 P.2d 498, 500 (1960). This court is not concerned with the merits of any proposed constitutional amendment, *Say v. Baker*, 137 Colo. 155, 322 P.2d 317 (1958), and will permit all legitimate presumptions to be drawn in favor of the propriety of the board's action when considering challenges to titles, submission clauses or summaries. *In re An Initiated Constitutional Amendment Respecting Rights of the Public to Uninterrupted Services by Public Employees*, 199 Colo. 409, 609 P.2d 631 (1980). Only in cases of severe discrepancies will the documents prepared by the board be deemed invalid. *Bauch v. Anderson*, 178 Colo. 308, 497 P.2d 698 (1972).

Even more difficult than the review function of this court is the board's arduous task of summarizing both efficiently and sufficiently the essential purport of sometimes prolix proposals. This critical activity must be performed with utmost dedication to the goal of producing documents which will enable the electorate, whether familiar or unfamiliar with the subject matter of a particular proposal, to determine intelligently whether to support or oppose such proposal.

 The opponents first assert that the titles, submission clause and summary are misleading because they fail to define or explain the terms "exempt positions" and "exemptions" in describing Section 13(2) of the proposed amendment. They

argue that voters will not understand that positions "exempt" from the personnel system could be filled by persons who have not taken competitive competency tests. However, the board is not required to provide lengthy explanations of every portion of a proposed constitutional amendment. *See In re Second Initiated Constitutional Amendment Respecting the Rights of the Public to Uninterrupted Service by Public Employees,* 200 Colo. 141, 613 P.2d 867 (1980). Indeed, overly detailed titles and submission clauses could by their very length tend to confuse voters. Furthermore, contrary to the opponents' argument, the use of the word "positions" is neither misleading nor inaccurate in the context of the general language adopted by the board. We conclude that the board acted well within its discretion in describing this feature of the proposal.

■■■■ The opponents next argue that the titles and submission clause mislead the public by failing to explain that presidents of colleges and universities are authorized to make employee appointments.[2] Because these two documents declare that the proposed amendment grants employee appointment authority to department heads, there is some danger that voters might infer that no persons other than department heads would be able to appoint employees if the proposal were adopted. However, as we have recognized, the board need not and cannot describe every feature of a proposed measure in the titles and submission clause. *See In re Title, Ballot Title & Submission Clause, & Summary Pertaining to the Sale of Table Wine,* 646 P.2d 916 (Colo.1982). Considering the overall length of the titles and submission clause, as drafted here, we are persuaded that the board did not abuse its discretion in electing to omit discussion of the appointment power of presidents of colleges and universities from these documents.

■■■ The opponents also challenge the board's description of the effect of the pro-

posal on the director's ability to authorize temporary employment. Article XII, Section 13(9) of the Colorado Constitution states as follows:

> The state personnel director may authorize the temporary employment of persons, not to exceed six months, during which time an eligible list shall be provided for permanent positions. No other temporary or emergency employment shall be permitted under the personnel system.

In *Colorado Association of Public Employees v. Lamm,* 677 P.2d 1350 (Colo. 1984), we concluded that these constitutional provisions prohibit the appointment of temporary personnel except under the very limited circumstances therein articulated. The proposed amendment would repeal Section 13(9) in its entirety, and the new constitutional provision would contain no reference to "temporary employment."

The opponents assert that the titles, submission clause and summary incorrectly describe the legal effect of the adoption of the proposed amendment with respect to the director's temporary employment authority. We disagree.

The titles and submission clause state that the proposal is "eliminating ... temporary employment provisions." This description is accurate, and it does not suggest any particular legal result in the event the proposed amendment were adopted. We therefore reject the opponents' contention that these documents are inadequate.

■■■ The board's summary describes the temporary employment provision of the proposed amendment as follows:

> The measure would eliminate ... the authority of the director to authorize temporary employment of up to six months....

The opponents argue that because the constitutional provisions which the proposal would repeal are in effect restrictions upon the director's authority to authorize tempo-

---

**2.** The summary does state that the proposal would authorize presidents of colleges and univ- ersities to make employee appointments.

rary employment, the summary is inaccurate in stating that the proposed amendment would eliminate the director's authority to make temporary appointments. Whether this language is accurate depends upon the construction ultimately given to the new constitutional provision and any legislation adopted pursuant thereto. Neither the board nor this court is authorized to interpret the meaning of a proposed amendment prior to its adoption. *In re Title, Ballot Title & Submission Clause, & Summary Pertaining to Casino Gaming,* 649 P.2d 303 (Colo.1982).

■ However, in general terms it is also true that the director now has constitutional authority to authorize temporary employment of up to six months. It is, therefore, not wholly inaccurate to describe the proposal as eliminating such present authority. This reading of the summary is somewhat forced; the board was much more successful in avoiding any tension between interpretation and description by referring in the titles and submission clause to elimination of constitutional provisions rather than to elimination of actual authority. Nevertheless, in reviewing actions of the board we will give great deference to the board's broad discretion in the exercise of its drafting authority. *Say v. Baker,* 137 Colo. 155, 322 P.2d 317 (1958). Only when language used by the board is clearly misleading will this court revise the board's action. *Bauch v. Anderson,* 178 Colo. 308, 497 P.2d 698 (1972). In view of these principles, we conclude that the language of the summary, while ambiguous, is not so clearly misleading as to require disapproval.

■ The opponents also contend that the titles and submission clause erroneously fail to refer expressly to the fact that the proposal deletes the present constitutional provision requiring standards of efficient service to be identical for all persons having like duties.[3] In considering the length and complexity of the titles and submission clause, we conclude that the board acted within its discretion in deciding

---

**3.** The summary does fully describe this deletion.

not to describe this specific provision therein. *In re Second Initiated Constitutional Amendment Respecting the Rights of the Public to Uninterrupted Service by Public Employees,* 200 Colo. 141, 613 P.2d 867 (1980).

■ The opponents finally assert that the titles, submission clause and summary are misleading because they fail to state that the proposal repeals Section 14(5) of Article XII of the Colorado Constitution, which provision requires the General Assembly to make adequate appropriations for the administration of the state personnel system. In consideration of the deference to be given to the board in its resolution of the interrelated problems of length, complexity and clarity, we cannot conclude that the decision to refrain from describing this feature of the proposal is fatal.

For the foregoing reasons, we affirm the action of the board.

### APPENDIX A

#### Be It Enacted by the People of the State of Colorado

SECTION 1. Section 13 of article XII of the constitution of the state of Colorado is REPEALED AND REENACTED, WITH AMENDMENTS, to read:

Section 13. *Personnel system of state—merit system.*

(1) The personnel system of the state shall comprise all appointive public officers and employees, except as otherwise provided for in this Constitution or as provided for by law by the general assembly. Appointments and promotions to offices and employments in the personnel system of the state shall be made according to merit and fitness, to be ascertained by competitive tests of competence without regard to race, creed, color, religion, sex, national origin or ancestry, handicap, age, or political affiliation.

(2) All persons exempt from the personnel system of the state on June 30, 1985

shall continue to be exempt from the personnel system of the state. Such exemptions shall be specified in the Colorado revised statutes. Any revisions to these exceptions shall be made by bill adopted by a two-thirds vote of both houses of the general assembly on final passage, and approval of the governor.

(3) Officers and employees within the judicial department, other than judges and justices, may be included within the personnel system of the state upon determination by the supreme court, sitting en banc, that such would be in the best interests of the state.

(4) There is hereby created the department of personnel, the head of which shall be the state personnel director, who shall be appointed under qualifications established by law, and who shall administer the personnel system and promulgate rules of the system as prescribed by law.

(5) There is hereby created a state personnel board to consist of five members, three of whom shall be appointed by the governor with the consent of the senate, and two of whom shall be elected by persons certified to classes and positions in the state personnel system. The general assembly shall provide by law for terms of office, removal, and duties of members of the state personnel board. The state personnel board shall hear appeals in accordance with this constitution and with the Colorado revised statutes.

(6) The state personnel director shall establish probationary periods for all persons initially appointed, but not to exceed twelve months for any class or position. After satisfactory completion of any such period, the person shall be certified to such class or position within the personnel system, but unsatisfactory performance shall be grounds for dismissal by the appointing authority during such period without right of appeal.

(7) Persons in the personnel system of the state shall hold their respective positions during efficient service or until reaching retirement age, as provided by law. A person certified to any class or position in the personnel system may be dismissed, suspended, or otherwise disciplined by the appointing authority upon written findings of failure to comply with standards of efficient service or competence or for willful misconduct, willful failure or inability to perform his duties, or final conviction of a felony or any other offense which involves moral turpitude, or written charges thereof may be filed by any person with the appointing authority which shall promptly be determined. Any action of the appointing authority taken under this subsection shall be subject to appeal to the state personnel board, with the right to be heard thereby in person, or by counsel, or both.

(8) The heads of the principal departments or their designees and the presidents of colleges and universities or their designees shall be the appointing authorities for employees of their respective departments and institutions, unless otherwise specified by law.

Section 14 of article XII of the constitution of the state of Colorado is repealed.

Section 2. This enactment shall become effective July 1, 1985.

## APPENDIX B

The summary prepared by the Board is as follows:

This measure would amend current Colorado constitutional provisions on the state personnel system. It would require appointments to the system to be made according to merit without regard to race, creed, color, religion, sex, national origin or ancestry, handicap, age, or political affiliation.

Persons exempt from the personnel system on June 30, 1985, would continue to be exempt on July 1, 1985, the effective date of the measure. The general assembly could only revise such exemptions by bill adopted by a two-thirds vote on final passage and approval of the governor.

The measure would transfer rulemaking power from the state personnel board to the state personnel director.

The general assembly would provide for the terms of office, duties, and removal of members of the board. The board would hear appeals in personnel matters.

The measure would make the heads of the principal departments and the presidents of colleges and universities the appointing authorities for their respective departments and institutions.

The measure would eliminate the requirement that appointees be residents of the state, the authority of the director to authorize temporary employment of up to six months, the requirement that an appointee be one of the three persons ranking highest on the eligible list for a position, and the present specific language requiring that persons in the system be graded and compensated according to standards of service which are the same for persons having like duties.

The fiscal impact of this measure is indeterminable.

May 2, 1984