In The Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999–2000 # 265.

Richard Brown and Mary Lou Chapman, Petitioners,

v.

Jeff Peckman, Patricia West, and Randall Mackenzie, Respondents,

and

William Hobbs, Alan J. Gilbert and Charles W. Pike, Title Board.

In the Matter of the Title, Ballot Title and Submission Clause, and Summary for 1999–2000 # 265.

Larry Schild and Thomas Kerbs, Petitioners,

v.

Jeff Peckman, Patricia West, and Randall Mackenzie, Respondents,

and

William Hobbs, Alan J. Gilbert and Charles W. Pike, Title Board.

Nos. 00SA194, 00SA197.

Supreme Court of Colorado, En Banc.

July 3, 2000.

Isaacson, Rosenbaum, Woods & Levy, P.C., Mark G. Grueskin, Edward T. Ramey, Blain D. Myhre, Denver, Colorado, Attorneys for Petitioners.

No Appearance by or on Behalf of Respondents

Hale Hackstaff, Tymkovich & Erkenbrack, L.L.P., Richard A. Westfall, Richard W. Daily, Denver, Colorado, Attorneys for Petitioners.

No Appearance by or on Behalf of Respondents

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Alan J. Gilbert, Solicitor General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, Colorado, Attorneys for Title Board.

PER CURIAM.

These consolidated ballot title review proceedings both pertain to a proposed initiative concerning the labeling of genetically engineered foods. The petitioners are registered electors who brought these original proceedings pursuant to section 1–40–107(2), 1 C.R.S. (1999), to review the actions taken by the initiative title setting board (the Board) in fixing the title, ballot title and submission clause ("titles"), and summary (collectively,

"titles and summary")[1] for Initiative 1900–00 # 265 (the Initiative).[2]

On May 5, 2000, the proponents of the Initiative, Jeff Peckman, Patricia West, and Randall MacKenzie, filed a draft of the Initiative with the Secretary of State's Office. The Initiative proposed to amend article 5 to title 25 of the Colorado Revised Statutes, by adding a new Part 12, consisting of sections 25–5–1201 to –1209, entitled "Labeling of Genetically Engineered Foods." The Board initially set the titles and summary following a hearing on May 17, 2000. Larry Schild and Thomas Kerbs, the petitioners in No. 00SA197, filed a motion for rehearing on May 24, 2000. The petitioners in No. 00SA194, Richard Brown and Mary Lou Chapman, filed a motion for rehearing on the same day. The Board heard the motions on May 26, 2000, made technical corrections to the text of the Initiative, and granted the motions in part and denied them in part.

Petitioners Schild and Kerbs assert that the Initiative contains more than one subject; that the titles and the summary are misleading because they do not address how the proposed measure affects the general assembly's power to legislate in the area of genetically engineered foods; that the titles and the summary are misleading because they do not accurately describe the types of food that must be labeled; and that the summary does not contain all of the changes that were made to it at the May 26 rehearing. Brown and Chapman contend that the summary is misleading because it omits one of two classes of food that the Initiative would require to be labeled, and that the summary is also misleading because it describes the labeling requirement for foods in which the composition or nutritional value is "significantly altered," while the Initiative says "measurably altered."

We conclude that the Initiative contains but a single subject, and that the titles and summary are not misleading.

## I.

■ Petitioners Schild and Kerbs assert that the Board should not have set the titles and summary because the Initiative contains multiple subjects, and therefore violates article V, section 1(5.5) of the Colorado Constitution, which states:

No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

Colo. Const. art. V, § 1(5.5); *see also* § 1–40–106.5, 1 C.R.S. (1999) (addressing the constitutional single-subject requirement). A proposed initiative violates this requirement when it "relate[s] to more than one subject and . . . has at least two distinct and separate purposes which are not dependent upon or connected with each other." *In re Proposed Initiative "Public Rights In Waters II"*, 898 P.2d 1076, 1078–79 (Colo.1995). But a proposed measure that "tends to effect or to carry out one general objective or purpose presents only one subject." *In re 1999–2000 # 25*, 974 P.2d 458, 463 (Colo.1999). We conclude that the proposed measure in this case contains a single subject, which is the labeling of genetically engineered food.

■ Schild and Kerbs contend that the Initiative contains a second, distinct subject, in that section 25–5–1209 of the measure attempts to limit the power of the general assembly to legislate in the area of genetically engineered foods. Proposed section 25–5–1209 states:

25–5–1209—Revisions of this law. The voters of Colorado authorize the general assembly to make changes consistent with the intent of this law so long as the changes further the purpose of this part.

The petitioners argue that section 1209 was intended to "prevent the General Assem-

---

1. The Board's titles and summary for the Initiative are attached as Appendix A to this opinion.

2. The text of proposed initiative 1999–00 # 265 is attached as Appendix B.

bly from enacting any laws that are in any way inconsistent with the purposes of [the Initiative] or which do not 'further its purpose.'" They assert that this constitutes tampering with the powers of an "independent constitutional body," and such tampering was held to constitute a separate subject in *In re 1999–2000 # 104,* 987 P.2d 249, 257 (Colo.1999). According to the petitioners, such tampering "represents a fundamental rewrite of Art. V, § 1 [of the Colorado Constitution], and an overhaul of the present demarcation of powers and responsibilities as between the General Assembly and the voters."

The proposed constitutional amendment in *In re # 104* would have changed the qualifications that were necessary for persons to hold judicial office. However, the measure would also have altered the powers of the Commission on Judicial Discipline, and we held, as we had held with respect to previous versions of the measure, that this constituted a second subject because the Commission "'is an independent constitutional body whose members are not "judicial officers."'" *Id.* (quoting *In re Proposed Initiative for 1997–1998 # 64,* 960 P.2d 1192, 1199–1200 (Colo.1998)).

■ We are mindful of our limited role in ballot title proceedings. In general, we will not interpret or construe the future legal effects of a proposed initiative. *See In re 1999–2000 # 200A,* 992 P.2d 27, 30 (Colo. 2000). However, to accept the petitioners' argument, we would have to conclude that a statute, even if approved by the electorate, cannot override the Colorado Constitution. It is legally impossible for a statute to effect an "overhaul of the present demarcation of powers and responsibilities as between the General Assembly and the voters." On the other hand, the initiative in *In re # 104 was* a proposed constitutional amendment and did seek to alter the powers of a constitutional body. *In re # 104* is therefore distinguishable.

Accordingly, the Board was well within its discretion when it accepted the proponents' contention that section 1209 was not intended as a separate subject, but was a purely precatory provision intended to impress the general assembly with the seriousness of the matter. We therefore conclude that the Initiative includes but a single-subject.

## II.

■ All of the petitioners allege that the titles and the summary are misleading and do not correctly and fairly express the Initiative's true intent and meaning. Section 1–40–106(3)(b), 1 C.R.S. (1999) provides:

(b) In setting a title, the title board shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a "yes" or "no" vote will be unclear. *The title for the proposed law or constitutional amendment, which shall correctly and fairly express the true intent and meaning thereof,* together with the ballot title, submission clause, and summary, shall be completed within two weeks after the first meeting of the title board.... *Ballot titles shall be brief,* shall not conflict with those selected for any petition previously filed for the same election, and shall be in the form of a question which may be answered "yes" (to vote in favor of the proposed law or constitutional amendment) or "no" (to vote against the proposed law or constitutional amendment) and which shall unambiguously state the principle of the provision sought to be added, amended, or repealed.

(Emphasis added.) "In reviewing the actions of the Board, we grant 'great deference to the board's broad discretion in the exercise of its drafting authority.' *In re Proposed Initiative Concerning "State Personnel Sys.",* 691 P.2d 1121, 1125 (Colo.1984)." *In re Proposed Ballot Initiative on Parental Rights,* 913 P.2d 1127, 1131 (Colo.1996). We will not rewrite the titles and summary to achieve the best possible statement of the proposed measure's intent. *See In re Mineral Prod. Tax Initiative,* 644 P.2d 20, 25 (Colo.1982). We will reverse the Board's action in setting the titles only when the language chosen is clearly misleading. *See In re "State Personnel Sys.",* 691 P.2d at 1125.

## A.

Schild and Kerbs assert that the summary is misleading because it does not indicate that if enacted the Initiative will "significantly impact the ability of the General Assembly to regulate" in the area of genetically engineered food. The fourth paragraph of the summary states:

The initiative delegates to the general assembly the responsibility to create enforcement mechanisms and provide funding for the labeling requirements and enforcement provisions. It permits the general assembly to make statutory revisions that are consistent with the intent of this initiative.

The second sentence of this paragraph closely follows the language of section 1209. In setting the summary, "[t]he title board shall prepare a clear, concise summary of the proposed law or constitutional amendment. The summary shall be true and impartial and shall not be an argument, nor likely to create prejudice, either for or against the measure." § 1–40–106(3)(a), 1 C.R.S. (1999).

To accept the petitioners' argument that the summary is misleading, we would have to agree that the Initiative is intended to effect a fundamental change in the constitutional roles of the legislature and the electorate. We have already rejected this contention above in the discussion of whether the Initiative contains a second subject. We reject it again here. The summary is not misleading. For the same reason, we also disagree with the petitioners' claim that the titles are misleading for failing to reflect the Initiative's "serious impact" on the general assembly's ability to legislate in this area. As our discussion regarding the single-subject requirement above makes clear, the Initiative does not, in our view, have the effects the petitioners contend.

## B.

Petitioners Schild and Kerbs and petitioners Brown and Chapman maintain that the titles and summary are misleading because they imply that only foods that *contain* genetically engineered materials will be regulated by the Initiative, while the measure will in fact regulate foods that do not contain any of the material. The titles state that the measure is a statutory amendment "concerning the labeling of genetically engineered food and drink for humans and animals, and, in connection therewith, defining which foods and drinks shall be labeled." The first paragraph of the summary provides that the Initiative "would add new statutory requirements for labeling of all foods that contain genetically engineered material and are sold or distributed in or from Colorado."

The petitioners point out, however, that section 25–5–1203 of the measure states, "All foods which contain a genetically engineered material, *or were produced with a genetically engineered material* that are sold or distributed in or from Colorado, shall bear labels in accordance with the following...." (Emphasis added.) In addition, proposed section 25–5–1202(4) defines "genetically engineered food," in part, as:

(b) All food products prepared or processed using genetically engineered enzymes or other genetically engineered processing agents, *whether those enzymes or agents are present in the final product or not;*

(c) All foods derived from agricultural products using genetically engineered agricultural inputs, *whether those inputs are present in the final product or not ....*

(Emphasis added.) Thus, all of the petitioners argue that the summary must be amended to indicate that even though food may not contain genetically engineered material itself, it may still be subject to the labeling requirements if it was produced using such material. However, as the Board points out, the second paragraph of the summary provides:

The measure defines "food" to mean any articles of food or drink for man or other animals, chewing gum, and articles used for components, including food additives, of any such article. In addition, the measure defines "food additive" to include any substance intended for use in producing, manufacturing, packing, processing, preparing, treating, packaging, transporting, or holding food and including any source of radiation intended for such use.

The summary thus indicates that the definition of "food" includes "food additive," which is a substance used in the production, processing, or manufacture of food. Reading this paragraph together with the summary's first paragraph, the summary adequately conveys the breadth of the Initiative's conception of foods subject to the labeling requirement. The summary's second paragraph reveals that the labeling requirements would apply to foods that are produced, processed, prepared, or treated with genetically engineered materials. The summary is "not intended to fully educate people on all aspects of the proposed law, and it need not set out in detail every aspect of the initiative." *In re Proposed Initiative Under the Designation "Tax Reform"*, 797 P.2d 1283, 1289 (Colo.1990). We will reverse the Board's action in setting the titles and summary only when the language chosen is clearly misleading. *See In re "State Personnel Sys."*, 691 P.2d at 1125. The summary in this case is not clearly misleading, and we therefore uphold the Board's action.

### C.

Schild and Kerbs also assert that the titles are misleading because they do not, in effect, themselves define what foods must be labeled. The titles state that the measure "concern[s] the labeling of genetically engineered food and drink for humans and animals, and, in connection therewith, defin[es] which foods and drinks shall be labeled." Section 1–40–106(3)(b) requires ballot titles to be brief. The Board was within its discretion when it set out the labeling requirements for genetically engineered food and drink in the summary but not the titles. *See In re 1999–2000 # 215 (Prohibiting Certain Open Pit Mining)*, No. 00SA65, 2000 Colo. LEXIS 643, at *6, 3 P.3d 11, 14–15 (2000) ("[A]ny ambiguity in the meaning of 'open mining' [in the titles] is clarified by its use in the summary. . . ."). Accordingly, we find that the failure to define the foods that must be labeled in the titles does not render the titles misleading to voters.

### D.

Petitioners Brown and Chapman contend that the summary incorrectly states,

"In particular, the measure requires all foods containing genetically engineered materials in which the composition or nutritional value is *significantly* altered contain proper disclosure of the alteration. . . ." (Emphasis added.) According to the petitioners, this is misleading because the section 25–5–1204(1) of Initiative itself provides:

> All genetically engineered foods that are *measurably* altered in composition or nutritional value . . . shall, in addition to being labeled "genetically engineered," be labeled to specify those changes in properties.

(Emphasis added.) Brown and Chapman assert that the summary's use of "significantly" instead of "measurably" renders the summary misleading to voters. We do not reach this contention, however. Section 1–40–107(2), 1 C.R.S. (1999), provides:

> (2) *If any person who filed a motion for a rehearing pursuant to subsection (1) of this section is overruled by the title board,* then the secretary of state shall furnish such person, upon request, a certified copy of the petition with the titles, submission clause, and summary of the proposed law or constitutional amendment, together with a certified copy of the motion for rehearing and of the ruling thereon. *If filed with the clerk of the supreme court within five days thereafter, the matter shall be disposed of promptly, consistent with the rights of the parties, either affirming the action of the title board or reversing it,* in which latter case the court shall remand it with instructions, pointing out where the title board is in error.

(Emphasis added.) Therefore, before a person may file a petition for review of the action of the title board, he or she must file a motion for rehearing that is overruled by the Board. Brown and Chapman did file a motion for rehearing with the Board, and the motion was denied. However, our review of the record reveals that these petitioners did not raise the issue they now bring either in their motion for rehearing or at the rehearing before the Board. The Board thus did not rule on the petitioners' "significantly— measurably" argument. Because they did

not raise the issue before the Board they cannot now urge this contention as a grounds for reversing the Board. *See In re Proposed Ballot Initiative on Parental Rights,* 913 P.2d 1127, 1129 n. 3 (Colo.1996).

### E.

 Schild and Kerbs raise one final issue. They assert that the transcript of the hearing indicates that the Board agreed to delete certain statements from the summary regarding the Initiative's legislative declaration. This has obviously been done in the version of the summary submitted to the court. However, the petitioners complain that in place of the part it was deleting, the Board agreed to add the statement that, "The Measure contains a detailed declaration stating the proponents' reasons for support of the measure." This does not appear in the final titles and summary the Board set. The petitioners want us to send the summary back so that the Board can add this sentence. However, as we have emphasized, our role in these proceedings is very limited. We will reverse the Board only if the titles and summary the Board sets are clearly misleading to the voters. *See In re "State Personnel Sys.",* 691 P.2d at 1125. Omission of the sentence describing the Initiative's legislative declaration does not render the summary clearly misleading to the electorate. We decline to reverse the Board's action in setting the summary.

### III.

Accordingly, we affirm the action of the board in setting the titles and summary.

### Appendix A

### Ballot Title Setting Board

### Proposed Initiative "1999–2000—# 265"[1]

The title is designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO REVISED STATUTES CONCERNING THE LABELING OF GENETICALLY ENGINEERED FOOD AND DRINK FOR HUMANS AND ANIMALS, AND, IN CON-NECTION THEREWITH, DEFINING WHICH FOODS AND DRINKS SHALL BE LABELED, SETTING FORTH THE CONTENTS AND PLACEMENT OF SUCH LABELS, REQUIRING THE COLORADO GENERAL ASSEMBLY TO ENACT MEASURES TO FUND, IMPLEMENT, AND ENFORCE THE LABELING REQUIREMENTS, AND PROVIDING AN AFFIRMATIVE DEFENSE FOR PERSONS WHO DO NOT KNOWINGLY VIOLATE SUCH LABELING REQUIREMENTS AND HAVE COMPLETED A REASONABLE INVESTIGATION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO REVISED STATUTES CONCERNING THE LABELING OF GENETICALLY ENGINEERED FOOD AND DRINK FOR HUMANS AND ANIMALS, AND, IN CONNECTION THEREWITH, DEFINING WHICH FOODS AND DRINKS SHALL BE LABELED, SETTING FORTH THE CONTENTS AND PLACEMENT OF SUCH LABELS, REQUIRING THE COLORADO GENERAL ASSEMBLY TO ENACT MEASURES TO FUND, IMPLEMENT, AND ENFORCE THE LABELING REQUIREMENTS, AND PROVIDING AN AFFIRMATIVE DEFENSE FOR PERSONS WHO DO NOT KNOWINGLY VIOLATE SUCH LABELING REQUIREMENTS AND HAVE COMPLETED A REASONABLE INVESTIGATION?

The summary prepared by the Board is as follows:

This initiative would add new statutory requirements for labeling of all foods that contain genetically engineered material and are sold or distributed in or from Colorado. In particular, the measure requires that all foods containing genetically engineered materials in which the composition or nutritional value is significantly altered contain proper disclosure of the alteration and that food containing trans-species gene transfers, such as by the addition of animal genes into

---

1. Labeling Genetically Engineered Foods

plants, be identified as such. Specific requirements concerning the size, placement, and content of labels on these products are included, and key terms are defined.

The measure defines "food" to mean any articles used for food or drink for man or other animals, chewing gum, and articles used for components, including food additives, of any such article. In addition, the measure defines "food additive" to include any substance intended for use in producing, manufacturing, packing, processing, preparing, treating, packaging, transporting, or holding food and including any source of radiation intended for such use. "Genetically engineered food" is defined to include food in which genetically engineered material accounts for more than one tenth of one percent of the weight of any ingredient or component of the product.

The initiative contains exemptions for restaurants and retail establishments that sell prepared foods and provides legal protection for persons who do not knowingly sell or distribute foods that contain genetically engineered materials after making reasonable investigation.

The initiative delegates to the general assembly the responsibility to create enforcement mechanisms and provide funding for the labeling requirements and enforcement provisions. It permits the general assembly to make statutory revisions that are consistent with the intent of this initiative.

The fiscal impact of the measure on state government is expected to be significant, and at or in excess of $1.2 million initially and $1.2 million per year for implementation. The measure is not expect to have any significant fiscal impact on local governments.

*Hearing May 17, 2000:*

*Single subject approved; staff draft adopted without amendments; titles and summary set.*

*Hearing adjourned 6:22 p.m.*

*Hearing May 26, 2000:*

*At request of proponent, technical corrections allowed in the text of the measure to change section 25–5–1202 so that its subsections are numbered sequentially (1) though (9) and to change section 25–5–1203 so that* *its subsections are numbered sequentially (1) through (3).*

*Motion for Rehearing submitted by Larry Schild and Thomas Kerbs denied with respect to single subject grounds.*

*Motions for Rehearing granted in part (to the extent of changes to titles and summary); and denied in part (with respect to all other grounds stated in motions).*

*Hearing adjourned 5:52 p.m.*

## Appendix B

Be it Enacted by the People of the State of Colorado:

Section 1. Article 5 of title 25, Colorado Revised Statutes, is amended BY THE ADDITION OF A NEW PART 12, to read

## PART 12

Labeling of Genetically Engineered Foods

25–5–1201—Declaration of the People.

The process of genetically engineering foods results in the material change of such foods. The U.S. Congress has previously required that all food bear labels that reveal material facts to consumers. Federal agencies have failed to uphold Congressional intent by allowing genetically engineered foods to be marketed, sold and otherwise used without labeling that reveals material facts to the public. Consumers desire to know whether the food they purchase and consume contains or is produced with a genetically engineered material for a variety of reasons, including the potential transfer of allergens into food and other health risks, concerns about potential environmental risks associated with the genetic engineering of crops, and religiously and ethically based dietary restrictions. Consumers have a right to know whether the food they purchase or consume contains or was produced with genetically engineered material. Reasonably available technology permits the detection in food of genetically engineered material, generally acknowledged to be as low as one tenth of one percent.

25–5–1202—Definitions. As used in this part 12.

(1) "Agricultural products" means any agricultural, horticultural, viticultural, or vegetable product grown or produced;

(2) "Food" means any articles used for food or drink for man or other animals, chewing gum, and articles used for components, including food additives, of any such article;

(3) "Food additive" means any substance, the intended use of which results or may be reasonably expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food including any substance intended for use in producing, manufacturing, packing, processing, preparing, treating, packaging, transporting, or holding food and including any source of radiation intended for any such use;

(4) "Genetically engineered food" means:

(a) All foods derived in whole or in part from any genetically engineered microorganism, organism, plant or livestock. If that genetically engineered material accounts for more than one tenth of one percent of the weight of any ingredient or component of the product, but not otherwise;

(b) All food products prepared or processed using genetically engineered enzymes or other genetically engineered processing agents, whether those enzymes or agents are present in the final product or not;

(c) All foods derived from agricultural products cultivated using genetically engineered agricultural inputs, whether those inputs are present in the final product or not; or

(d) All dairy and meat products derived from livestock that have been fed genetically engineered material or derived from livestock that have been treated with genetically engineered hormones or drugs.

(5) "Genetically engineered material" means material derived from any part of a genetically engineered organism –

(6) "Genetically engineered organism" means—

(a) an organism that has been altered at the molecular or cellular level by means that are not possible under natural conditions or processes, including but not limited to recombinant DNA and RNA techniques, cell fusion, micro-encapsulation and macro-encapsulation, gene deletion and doubling, introducing a foreign gene and changing the positions of genes, other than a means consisting exclusively of breeding, conjugation, fermentation, hybridization, in-vitro fertilization, tissue culture or artificial interbreeding in plants, animals or humans; or

(b) an organism made through sexual or asexual reproduction, or both, involving an organism described in subclause (a).

(7) "Label" means a display of written, printed, or graphic matter upon or connected to the immediate container or surface of any food and on the outside container or wrapper, if any, of a bulk, wholesale or retail package of such food, or easily legible through such outside container or wrapper.

(8) "Labeling" means all labels and other written, printed, or graphic matter upon an article or any of its containers or wrappers or accompanying such article, and

(9) "Principal display panel" means that part of a label that is most likely to be displayed, presented, shown or examined under normal and customary conditions of display for bulk, wholesale or retail sale.

25–5–1203—Labeling

All foods which contain a genetically engineered material, or were produced with a genetically engineered material that are sold or distributed in or from Colorado, shall bear labels in accordance with the following:

(1) Labels with information as follows:

(a) "Genetically engineered" and

(b) "NOTICE: this product contains a genetically engineered material, or was produced with a genetically engineered material"

(2) The information required in paragraph (a) of subsection (1) of this section imme-

diately precedes the information required in paragraph (b) of subsection (1) of section and shall not be less than twice the size of the information required in paragraph (b) of subsection (1) of this section.

(3) The information required in paragraphs (a) and (b) of subsection (1) of this section shall be clearly legible and conspicuous on the principal display panel.

25-5-1204—Additional labeling requirements.

(1) All genetically engineered foods that are measurably altered in composition or nutritional value, or that require preparation steps different from their natural counterparts shall, in addition to being labeled "genetically engineered," be labeled to specify those changes in properties.

(2) All genetically engineered foods resulting from trans-species gene transfers shall specify, in the label, the source of the transgene used and the purpose of the transfer as, for example "This squash contains viral genetic information designed to make it resistant to viral infection."

(3) All genetically engineered foods resulting from transfer of animal genes into plants shall be labeled to so indicate in a manner that will allow vegetarians and those with dietary restrictions to observe their dietary guideline as, for example, "This tomato contains genetic material derived from the flounder, a fish of the family Bothidiae."

25-5-1205—Exclusions from labeling requirements. The labeling provisions of this part do not apply to food—

(1) served in restaurants or other establishments in which food is served for immediate human consumption; or

(2) processed and prepared primarily in a retail establishment, is ready for human consumption, and is offered for sale to consumers but not for immediate consumption in such establishment and is not offered for sale outside such establishment.

25-5-1206—Enforcement. By the effective date, as set forth below, the general assembly shall proscribe and enact measures to fund, implement and enforce this new part 12.

25-5-1207—Persons not liable for non-compliance. No person shall be liable for non-compliance with this part if such person shall sustain the burden of proof that such person did not know the food sold or distributed contained, or was processed with, genetically engineered material without being labeled as required herein, and that such person made a reasonable investigation to determine the presence of genetically engineered material, which may be satisfied by a reasonable reliance on written certification of food inspectors.

25-5-1208—Effective date. This new part 12 shall become effective one hundred eighty days after the proclamation of the vote by the governor.

25-5-1209—Revisions of this law. The voters of Colorado authorize the general assembly to make changes consistent with the intent of this law so long as the changes further the purpose of this part.