In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY ADOPTED FEBRUARY 10, 1992 BY the TITLE SETTING REVIEW BOARD AND PERTAINING TO A PROPOSED INITIATIVE FOR AN AMENDMENT TO ARTICLE XVI, SECTION 5, COLORADO CONSTITUTION, ENTITLED "W.A.T.E.R."

Gregory J. Hobbs, Jr., Principal Counsel, Northern Colorado Water Conservancy District and Municipal Subdistrict, Northern Colorado Water Conservancy District, Petitioner,

and

Honorable Robert L. Pastore and Richard G. Hamilton,

and

Title Setting Review Board, Honorable Natalie Meyer, Raymond Slaughter, and Douglas Brown, Respondents.

No. 92SA73.

Supreme Court of Colorado, En Banc.

May 18, 1992.

**1302**

Davis, Graham & Stubbs, Gregory J. Hobbs, Jr., Denver, for petitioner.

Karl S. Tameler, Pueblo, for respondents Robert L. Pastore and Richard Hamilton.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Denver, for Title Setting Review Bd.

Fairfield and Woods, P.C., Howard Holme, Stephen H. Leonhardt, Miriam S. Mazel, Denver, for amicus curiae Southeastern Colorado Water Conservancy Dist.

Gregory L. Johnson, Colorado Springs, for amicus curiae City of Colorado Springs.

Peterson & Fonda, William F. Mattoon, Pueblo, for amicus curiae Board of Water Works of Pueblo, Colorado.

Ken Baker, Salida, for amicus curiae Arkansas Water Conservancy Dist.

Justice QUINN delivered the Opinion of the Court.

This is a statutory proceeding in which the petitioner, Gregory J. Hobbs, Jr., a registered elector of the State of Colorado and principal counsel for the Northern Colorado Water Conservancy District and the Municipal Subdistrict of the Conservancy District, challenges the title, the ballot title and submission clause, and the summary prepared by the Initiative Title Setting Review Board (Board) for a proposed amendment to Article XVI, section 5 of the Colorado Constitution, which pertains to the appropriation and use of the water of the natural streams within the state. Hobbs contends that the Board is an agency of the executive branch of government and has failed to comply with several provisions of the Administrative Procedure Act, §§ 24–4–101 to –108, 10A C.R.S. (1988 & 1991 Supp.), in designating the title, ballot title and submission clause, and summary.

Hobbs also argues that the summary erroneously misleads the public into believing that the measure will have no significant fiscal impact on the state or its political subdivisions. We affirm the action of the Board.

I.

The proposed measure, which is entitled "Willingness and Appropriateness in Transfers and Exports of Rivers" (W.A.T.E.R.), provides as follows:

Article XVI, Section 5. Waters of Streams Public Property.

The water of every natural stream, not heretofore appropriated, within the State of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided. FROM AND AFTER JANUARY 1, 1993, WHENEVER A WATER COURT OF COMPETENT JURISDICTION ENTERS A FINAL DECREE ALLOWING A WATER TRANSFER FROM ANY WATER CONSERVANCY DISTRICT, OR A WATER CONSERVATION DISTRICT, FOR USE OF SAID FINAL DECREED WATER OUTSIDE OF THAT DISTRICT, AND SAID WATER TRANSFER EITHER TRANSFERS WATERS FROM ONE RIVER BASIN SUBJECT TO AN INTERSTATE RIVER COMPACT TO ANOTHER BASIN OR WHEN SAID TRANSFER OR TRANSFERS WERE OFFICIALLY CONTESTED BY SUCH A DISTRICT, THAT PROPOSED TRANSFER MUST ALSO RECEIVE THE APPROVAL OF THE MAJORITY OF THOSE REGISTERED OR OTHERWISE QUALIFIED ELECTORS IN THAT DISTRICT WHICH IS MOST DIRECTLY AFFECTED BY SUCH TRANSFER OF WATER FOR USE OUTSIDE SAID DISTRICT WHO ACTUALLY CAST BALLOTS AT THE NEXT GENERAL ELECTION FOLLOWING SAID FINAL DECREE. NEITHER THE BOUNDARIES, NOR THE CONTINUED EXISTENCE, OF A WATER CONSERVANCY DISTRICT,

OR OF A WATER CONSERVATION DISTRICT, MAY BE AFFECTED UNLESS THOSE MODIFICATIONS ARE, AT AN ELECTION, APPROVED BY THE MAJORITY OF ITS REGISTERED OR OTHERWISE QUALIFIED ELECTORS.

The proponents of the measure submitted it to the Board on January 23, 1992. The Board, acting pursuant to section 1–40–101(2), 1B C.R.S. (1991 Supp.), requested the Office of State Planning and Budgeting and the Department of Local Affairs to prepare an estimate of the fiscal impact of the proposal. The Office of State Planning and Budgeting responded as follows:

This initiative, if approved, should have no fiscal impact on state government revenues or expenditures. There could be additional costs to conduct elections at the local level if any elections are necessary. However since such elections would be held as part of regularly scheduled general elections, such additional costs would likely be insignificant.

The Department of Local Affairs also responded as follows:

It is our opinion that the proposed initiative will have no significant fiscal impact on local governments in the state. The enabling legislation may require that the expenses of an election be borne by a particular conservancy district or county. In either case, the costs of such election would be incremental and non-quantifiable.

At a public meeting conducted by the Board, Hobbs commented that the text of the proposed measure did not clearly distinguish between the elector-approval standards applicable to the water-transfer provisions, which require approval by a majority of electors casting ballots, and the elector-approval standards applicable to a boundary change, which require approval by a majority of the registered or qualified electors within the district. Hobbs also commented on the fiscal impact of the proposal. It was his opinion that the public should be made aware of the fact that the election requirements would involve increased governmental costs and of the further fact that in the event a municipality annexed land not included within a water conservancy or conservation district, the municipality will be burdened with the cost of approximately $7,000 per household in order to develop and provide an alternative water supply for the newly annexed area. At the public meeting the Board also heard contrary statements, presented by the proponents of the measure, indicating that the costs of local elections would be minimal and that water conservancy and conservation districts could enter into cooperative agreements with political subdivisions of the state for the lease or exchange of water and thereby obviate the need for an area outside a water conservancy or conservation district to build its own water supply system.

Following the hearing, the Board fixed a title, ballot title and submission clause, and summary for the proposed measure. Hobbs then filed with the Secretary of State a petition for rehearing in which he again asserted that the title and the ballot title and submission clause did not adequately clarify the two elector-approval standards in the measure and that the summary would mislead the electorate into believing that the proposed measure will have no significant fiscal impact on state government or its political subdivisions. The Board amended the title and fixed it as follows:

AN AMENDMENT TO ARTICLE XVI, SECTION 5 OF THE COLORADO CONSTITUTION TO REQUIRE A MAJORITY VOTE, AT A GENERAL ELECTION, BY THE VOTING ELECTORS OF THE TRANSFEROR WATER CONSERVATION OR WATER CONSERVANCY DISTRICT MOST DIRECTLY AFFECTED BEFORE WATER MAY BE TRANSFERRED OUT OF A RIVER BASIN SUBJECT TO AN INTERSTATE RIVER COMPACT OR TRANSFERRED UNDER A DECREE WHICH THE DISTRICT OFFICIALLY CONTESTED; AND TO REQUIRE APPROVAL BY A MAJORITY OF ALL THE ELECTORS OF A WATER CONSERVATION OR WATER CONSERVANCY DISTRICT

FOR CHANGES AFFECTING THE DISTRICT'S BOUNDARIES OR CONTINUED EXISTENCE, REGARDLESS OF THE NUMBER OF ELECTORS ACTUALLY VOTING.

The ballot title and submission clause, as fixed by the Board, is as follows:

SHALL THERE BE AN AMENDMENT TO ARTICLE XVI, SECTION 5 OF THE COLORADO CONSTITUTION TO REQUIRE A MAJORITY VOTE, AT A GENERAL ELECTION, BY THE VOTING ELECTORS OF THE TRANSFEROR WATER CONSERVATION OR WATER CONSERVANCY DISTRICT MOST DIRECTLY AFFECTED BEFORE WATER MAY BE TRANSFERRED OUT OF A RIVER BASIN SUBJECT TO AN INTERSTATE RIVER COMPACT OR TRANSFERRED UNDER A DECREE WHICH THE DISTRICT OFFICIALLY CONTESTED; AND TO REQUIRE APPROVAL BY A MAJORITY OF ALL THE ELECTORS OF A WATER CONSERVATION OR WATER CONSERVANCY DISTRICT FOR CHANGES AFFECTING THE DISTRICT'S BOUNDARIES OR CONTINUED EXISTENCE, REGARDLESS OF THE NUMBER OF ELECTORS ACTUALLY VOTING?

The Board denied Hobbs' request to change the text of the summary regarding the fiscal impact of the proposed measure. The summary prepared by the Board on the proposed measure reads as follows:

This measure adds election requirements to existing requirements under Colorado water law in specific situations. It requires, in addition to a decree of a water court, that any transfer of water which decree was officially contested by a water conservancy district or water conservation district, or any transfer of water from a river basin subject to an interstate water compact to another basin, receive the approval of a majority of the qualified electors of the district from which the water is transferred who cast ballots at the next general election following issuance of the decree. The measure also provides that changes which affect the boundaries or continued exist-

ence of the district require an affirmative vote of a majority of all the electors of the district, regardless of the number of electors actually voting.

The measure is not expected to have any significant fiscal impact.

## II.

Before addressing Hobbs' claims, we briefly review the constitutional and statutory schemes for implementing the right of initiative. Colo. Const. art. V, § 1, 1A C.R.S. (1991 Supp.). Pursuant to Article V, section 1(5) of the Colorado Constitution, the original draft of the text of a proposed initiated constitutional amendment must be submitted to the Legislative Research and Drafting Offices for review and comment. The Research and Drafting Offices, within two weeks after the submission, must render their comments to the proponents of the measure at a meeting open to the public. *See* § 1–40–101(1), 1B C.R.S. (1991 Supp.). The purpose of this meeting is to provide the proponents with an opportunity to amend the petition before submitting it to the Secretary of State. *Id.* After reviewing the proposed measure, the Secretary of State is required to convene the Board, which consists of the Secretary, the Attorney General, and the Director of the Office of Legislative Legal Services or the director's designee. The Board then proceeds to hold a public meeting on the measure for the purpose of designating and fixing a "proper fair title for each such proposed law or constitutional amendment, together with a submission clause," and a summary. § 1–40–101(2), 1B C.R.S. (1991 Supp.).

The title must be a brief statement "that fairly and accurately represents the true intent and meaning of the proposed text of the initiative." § 1–40–100.3(6), 1B C.R.S. (1991 Supp.). The ballot title, which is the language printed on the ballot and is comprised of both the submission clause and the title, § 1–40–100.3(1) & (4), 1B C.R.S. (1991 Supp.), also must be brief and "in the form of a question which may be answered 'yes' or 'no' and which shall unambiguously

state the principle of the [proposed] provision." § 1–40–101(2), 1B C.R.S. (1991 Supp.). The summary, which consists of a condensed statement as to the intent of the proposed measure, § 1–40–100.3(5), 1B C.R.S. (1991 Supp.), must be clear, concise, true, and impartial and must not consist of an argument nor be such as to likely create prejudice either for or against the measure. § 1–40–101(2), 1B C.R.S. (1991 Supp.). If the Board is of the opinion that a proposed measure will have a fiscal impact on the state or any of its political subdivisions, the Board is required to request assistance from the Office of State Planning and Budgeting or the Department of Local Affairs. § 1–40–101(2), 1B C.R.S. (1991 Supp.). If the Board determines that the measure will have a fiscal impact, the Board must include in the summary an estimate of the fiscal impact together with an explanation thereof. *Id.*

After the Board fixes the title, ballot title and submission clause, and summary, any registered elector may file a motion for rehearing with the Secretary of State on the basis that the title, ballot title and submission clause, and summary are "unfair or that they do not clearly express the true meaning and intent of the proposed law or constitutional amendment." § 1–40–102(3), 1B C.R.S. (1991 Supp.). If the petition for rehearing is denied, the elector may petition this court for review of the Board's action. *Id.* We recently summarized the long-established standards of judicial review applicable to the Board's action:

> In reviewing the Board's action, we must not in any way concern ourselves with the merit or lack of merit of the proposed amendment, since that issue rests with the electorate. *Bauch v. Anderson,* 178 Colo. 308, 310, 497 P.2d 698, 699 (1972). We have emphasized in our prior decisions that all legitimate presumptions must be indulged in favor of the Board's action, and only in a clear case should its action be set aside as invalid. *Id.; see also In the Matter of Increase of Taxes on Tobacco Products,* 756 P.2d [995,] 998 [ (Colo.1988) ]; *In the Matter of Title, Ballot Title and Submission Clause, and Summary Per-*

*taining to Casino Gaming Initiative,* 649 P.2d 303, 306 (Colo.1982). In short, so long as the title, the ballot title and submission clause, and the summary accurately reflect the central features of the initiated measure in a clear and concise manner, we will not interfere with the Board's choice of language.

*In the Matter of a Proposed Constitutional Amendment Concerning Limited Gaming,* 826 P.2d 1241, 1245 (Colo.1992).

### III.

■ We first address Hobbs' claim that the Board is an agency of the executive branch of government and in that capacity failed to comply with the following provisions of the State Administrative Procedure Act: section 24–4–101.5, 10A C.R.S. (1988), which requires an agency to analyze the impact of its decision on the public interest; section 24–4–105(14), 10A C.R.S. (1988), which requires an agency conducting a hearing to include in its final decision findings of fact and conclusions of law; and section 24–4–106(7), 10A C.R.S. (1988), which requires that the final agency action be supported by substantial evidence. We are unpersuaded by Hobbs' claim.

For purposes of the Administrative Procedure Act, an agency includes any board or commission of the executive branch of government. § 24–4–102(3), 10A C.R.S. (1988). We have no quarrel with the proposition that the Board qualifies as an agency. It does not follow from that proposition, however, that the Board's action in fixing a title, ballot title and submission clause, and summary is subject to the requirements and standards of the Administrative Procedure Act. "It is a general rule of statutory construction that a specific statute prevails over a general one." *Shoenberg Farms, Inc. v. People ex rel. Swisher,* 166 Colo. 199, 215, 444 P.2d 277, 285 (1968). The Administrative Procedure Act expressly incorporates this general rule by providing in section 24–4–107, 10A C.R.S. (1988), that "where there is a conflict between this article and a specific statutory provision relating to a specific agen-

cy, such specific statutory provision shall control as to such agency."

The Board is a special statutory body created by the General Assembly for the purpose of implementing the constitutional right of initiative. Its function is to ensure that any initiative measure will be presented to the electorate in a manner that unambiguously states the true intent and meaning of the measure. The statutory scheme creating the Board contains detailed and comprehensive provisions delineating the Board's duties and the process and procedural standards by which the Board is to carry out its unique statutory charge. §§ 1–40–101 and –102, 1B C.R.S. (1991 Supp.). When the Board holds a public meeting for the purpose of designating and fixing a title, ballot title and submission clause, and summary, it is not acting as an administrative agency functioning in an adjudicative capacity. The public meeting is not an adversarial proceeding designed to adjudicate the legal rights or duties of specific individuals vis-a-vis other parties through the application of legal norms to past or present facts developed through sworn testimony and other evidence. Nor is the Board acting as an administrative agency functioning in a rulemaking proceeding. The public meeting is akin to a public forum in which interested persons can present their views on a proposed measure for the purpose of enhancing the accuracy, clarity, and impartiality of the text ultimately selected by the Board for the title, ballot title and submission clause, and summary.

██ Far from being designed either to further the adjudication of legal rights and duties or to implement a rulemaking function, the statutory provisions of sections 1–40–101 and –102, 1B C.R.S. (1991 Supp.), create a specific process and distinctive procedures applicable only to the unique functions of the Board. We conclude, therefore, that these special statutory provisions, rather than the provisions of the Administrative Procedure Act, govern the Board's action in designating and fixing the title, ballot title and submission clause, and summary of a proposed initiative measure.

## IV.

We next consider Hobbs' claim that the summary prepared by the Board misleads the public into believing that the proposed measure will have no significant fiscal impact on the state or any of its political subdivisions. We find his claim devoid of merit.

██ The purpose of including a fiscal impact statement in the summary is to inform the electorate of the fiscal implications of a proposed measure. Because the fiscal impact of a proposal may be indeterminate or may involve a number of variables that are difficult if not impossible to evaluate, the Board has considerable discretion in exercising its judgment on whether to include in the summary a statement that a proposed measure will have a fiscal impact on government and, if so, how to best communicate that fact without creating prejudice for or against the proposed measure. The Board's exercise of discretion, of course, is not unlimited and must have some support in the record. *See, e.g., In the Matter of Title Pertaining to Tax Reform,* 797 P.2d 1283, 1291–92 (Colo. 1990); *In Matter of Title Pertaining to Sale of Table Wine,* 646 P.2d 916, 923 (Colo.1982); *In re Initiated Constitutional Amendment Concerning Uninterrupted Service by Public Employees,* 200 Colo. 141, 148, 613 P.2d 867, 872 (1980).

██ Prior to the public meeting, the Board received reports from the Office of State Planning and Budgeting and the Department of Local Affairs, both of which stated that the proposed measure would have no fiscal impact on state revenues and that any expenses incident to an election at the local level either would be insignificant or would be incremental or non-quantifiable. In addition, the Board had the benefit of statements from the proponents of the measure that the cost of local elections would be minimal. Although at the public hearing before the Board Hobbs made a lengthy statement to the contrary, it was the prerogative of the Board to determine, based on the reports and statements sub-

mitted to it, whether the proposed measure would have a significant fiscal impact on the state or its political subdivisions. We cannot say under the record before us that the Board's determination that "[t]he measure is not expected to have any significant fiscal impact" is unsupported by the record.[1]

The ruling of the Board is affirmed.

---

1. The proponents of the measure request us to rule that this proceeding is frivolous and to assess attorney fees and costs against Hobbs. As discussed above, section 1–40–102(3), 1B C.R.S. (1991 Supp.), provides that "any registered elector ... who is not satisfied with the titles, summary, and submission clause thus provided and claims them to be unfair or that they do not clearly express the true meaning and intent of the proposed law or constitutional amendment ... may file a motion with the secretary of state for a rehearing" and if overruled may petition this court for review. Hobbs is a qualified elector of the State of Colorado, and his petition is not frivolous. We therefore deny the proponents' request.