**Ari ARMSTRONG, Protestor–Appellant,**

v.

**Donetta DAVIDSON, in her official capacity as Secretary of State, Respondent–Appellee,**

and

**John F. Head and Arnold Grossman, Intervenors–Appellees.**

No. 00SA298.

Supreme Court of Colorado, En Banc.

Oct. 10, 2000.

As Modified on Denial of Rehearing Oct. 30, 2000.

Paul Grant, Englewood, Colorado, Attorney for Protestor–Appellant.

Ken Salazar, Attorney General, Maurice Knaizer, Deputy Attorney General, State Services Section, Denver, Colorado, Attorneys for Respondent–Appellee.

Isaacson, Rosenbaum, Woods & Levy, P.C., Mark G. Grueskin, Blain D. Myhre, Denver, Colorado, Attorneys for Intervenors–Appellees.

Justice HOBBS Delivered the Opinion of the Court.

We determine in this case that the proponents of an initiative may commence circulating their petition for signatures after the Title Board has taken its final action in regard to the ballot titles and summary, pursuant to section 1–40–107(1) and (5), 1 C.R.S. (2000), and while that action is before us on appeal pursuant to section 1–40–107(2), 1 C.R.S. (2000).[1] In light of our ruling affirming the Title Board's action, Secretary of State Donetta Davidson (Davidson), in making her determination of sufficiency, properly counted signatures obtained after the Title Board denied the rehearing petitions filed with it.[2] See In re Ballot Title 1999–2000 # 255, 4 P.3d 485 (Colo.2000) [hereinafter Ballot Title # 255 ]. We therefore hold that the District Court for the City and County of Denver (District Court) correctly upheld Davidson's determination and certification of proposed Initiative 1999–2000 # 255 (Initiative)[3] to the ballot.

I.

On September 14, 2000, the District Court entered its order affirming Davidson's determination, pursuant to section 1–40–117, 1 C.R.S. (2000), that the Initiative had a sufficient number of signatures for certification to the November 7, 2000 general election ballot. This appeal is before us pursuant to section 1–40–119, 1 C.R.S. (2000), which provides that we shall review the District Court's decision regarding a registered elector's protest of the Secretary of State's sufficiency determination.

The operative facts are uncontested. On April 19, 2000, the Title Board set the titles and summary for the Initiative. On July 3, 2000, we issued our opinion affirming the Title Board's action in setting the titles and summary. See Ballot Title # 255, 4 P.3d at 500. Following presentation of the signed petition to her on August 2, 2000, Davidson conducted a random sample of the petition signatures in accordance with section 1–40–116(4). Proponents submitted approximately 108,000 signatures to Davidson. Based upon the random sample, she concluded that the petition contained 85,438 valid signatures, totaling more than 110% of the minimum number of required signatures. Davidson issued her statement of sufficiency on August 8, 2000, and certified the Initiative to the November 7, 2000 general election ballot.

Ari Armstrong (Armstrong), who appeared before us as a party in Ballot Title # 255, filed a complaint in the District Court alleging that Davidson could not count signatures gathered prior to our decision in that case, despite our affirmance of the Title Board's

---

**1.** Protestor–Appellant Ari Armstrong presents three issues: (1) "Whether the statutes define a six month maximum petition circulation period for initiative petitions"; (2) "[w]hen the petition circulation period begins"; and (3) "[w]hether the statutes require petition proponents to postpone petition circulation until a final decision (where no further appeal is possible) is rendered determining the validity of the ballot titles, summary, and submission clause."

Respondent–Appellee Donetta Davidson states a single issue: "Whether proponents of a proposed initiative measure may circulate a petition while an appeal of the Title Board's action is pending in the Colorado Supreme Court[.]"

Intervenors–Appellees John F. Head and Arnold Grossman state two issues: (1) "Whether an

initiative's title, ballot title and submission clause, and summary is 'fixed and determined' by the Title Board or by the Colorado Supreme Court"; and (2) "[w]hether an initiative's proponents may gather signatures once the Title Board has rendered its final decision on a motion for rehearing."

**2.** Davidson made her determination of sufficiency pursuant to § 1–40–116(4), 1 C.R.S. (2000), which reads in part: "The secretary of state shall verify the signatures on the petition by use of random sampling."

**3.** The Initiative is also commonly referred to as "Amendment 22," and provides for background checks at gun shows.

action. Davidson entered an appearance to defend her sufficiency determination and ballot certification. Proponents of the Initiative, John F. Head and Arnold Grossman (Head and Grossman), intervened to support her. The District Court found all parties in agreement that "signatures were collected between April 19 and July 3 and without those signatures, there would be an inadequate number to place the initiative on the ballot." Treating Davidson's motion to dismiss as a motion for summary judgment, the District Court upheld her sufficiency determination and certification of the Initiative to the ballot. We affirm the judgment of the District Court.

## II.

■■■ We hold that an initiative proponent may circulate the petition for signatures after the Title Board's setting of the titles and summary has become a final Title Board action. The Title Board's action becomes final upon denial of a rehearing petition or upon expiration of the time for filing a rehearing petition with the Title Board. The Secretary of State may count the signatures of registered electors obtained during an appeal of the Title Board's action to us, if we affirm the Title Board's action. However, the initiative proponent who circulates a petition for signatures prior to our decision runs the risk that we may reverse the Title Board's action.

The principal arguments in the case now before us are as follows:

Armstrong contends that:

Where [section] 1–40–107(5) says the petition filing period cannot begin until a final decision is rendered by the title board or the Colorado supreme court, that cannot mean anything other than "until a final decision by the title board, or, in the event an appeal is taken, until a final decision by the Colorado supreme court." In other words, no petitioning may begin until there is an end to proceedings challenging the title under [section] 1–40–107.

Davidson responds:

Interpreting the Initiative Code to permit initiative proponents to circulate petitions

after the Title Board sets the title and while an appeal of the title setting is pending best accomplishes the goals of the Initiative Code. It allows proponents to present their proposed legislation to the public as quickly as possible. If the Court affirms the Title Board's decision, then the collected signatures can be counted, and the measure may be placed on the ballot. Conversely, the signatures collected during the pendency of an appeal will be rejected if the Supreme Court reverses the actions of the Title Board.

Head and Grossman argue:

Proponents complied with the statutory parameters for petition circulation and filing. They circulated their petitions after the Title Board issued a final decision [and] ruled on the motions for rehearing, as authorized by [section] 1–40–107(4), C.R.S. They also filed the petitions within six months after the titles and summary were fixed and determined and three months prior to the November 7, 2000 election, as required by [sections] 1–40–107(5), –108.

We employ administrative law and statutory construction principles in reaching our decision that Davidson properly included signatures of electors obtained after denial of the rehearing petitions and pending our decision in *Ballot Title # 255*.

### A. Special Statutory Proceeding

■ The citizens of Colorado have reserved to themselves the right of initiative for proposing changes to the constitution and statutes of Colorado. *See In re Ballot Title 1999–2000 # 200A*, 992 P.2d 27, 29 (Colo. 2000). Title 1, Article 40 of the Colorado Revised Statutes governs the initiative process in Colorado. *See In re Ballot Title 1999–2000 245(b),245(c),245(d)&245(e)*, 1 P.3d 720, 721 (Colo.2000). The initiative law favors placing matters before the voters, and guides our statutory and constitutional construction. *See Havens v. Board of County Comm'rs*, 924 P.2d 517, 520, 524 (Colo.1996).

■■ The Title Board is a "special statutory body created by the General Assembly for the purpose of implementing the constitu-

tional right of initiative [and] ensur[ing] that any initiative measure will be presented to the electorate in a manner that unambiguously states the true intent and meaning of the measure." *In re Ballot Title "W.A.T.E.R.",* 831 P.2d 1301, 1306 (Colo. 1992). The Title Board engages in a special statutory proceeding when it sets the titles and summary for a proposed initiative. *See id.*

Once the Title Board denies a petition for rehearing, a person may seek appellate review of the Title Board's action. *See* § 1-40–107(2); *In re Ballot Title 1999–2000 # 265,* 3 P.3d 1210, 1215–16 (Colo.2000). The statute then directs us that the matter on appeal shall be "disposed of promptly, consistent with the rights of the parties, either affirming the action of the title board or reversing it, in which latter case the court shall remand it with instructions, pointing out where the title board is in error." § 1–40–107(2). In conducting our review, we begin with a presumption that the Title Board has acted validly. *See In re Ballot Title 1999–2000 # 235(a),* 3 P.3d 1219, 1222 (Colo. 2000); *In re Ballot Title 1999–2000 # 25,* 974 P.2d at 465.

Our function on appeal of the Title Board's action is to determine whether the titles and summary it has adopted: (1) comply with the single-subject requirement for initiatives; and (2) clearly, accurately, and fairly characterize the proposed initiative. *See In re Proposed Initiative for 1999–2000 # 104,* 987 P.2d 249, 253–54 (Colo.1999). Either or both of these issues may be raised on appeal.

The principal object of the Title Board's action and our appellate review is to "preserve and protect the right of initiative." § 1–40–106.5(2), 1 C.R.S. (2000). The Title Board's role is primary; our function is limited. *See In re Proposed Initiatives for 1999–2000 ## 172–175,* 987 P.2d 243, 245 (Colo. 1999).

Our responsibility is to decide whether the Title Board's action complies with the applicable constitutional and statutory requirements. The titles and summary need not be the best possible statement of a proposed measure's intent. *See In re Ballot Title 1999–2000 # 265,* 3 P.3d at 1213 (Colo. 2000). We will defer to the Title Board's language if not clearly misleading; we resolve all legitimate presumptions in favor of the Title Board's choice. *See In re Ballot Title 1999–2000 ## 227&228,* 3 P.3d 1, 5 (Colo.2000). We will not construe the legal effect of an initiative, but we must examine and characterize it sufficiently to conduct our review of the Title Board's action. *See In re Ballot Title 1997–98 # 30,* 959 P.2d 822, 825 (Colo.1998). The Title Board is not required to address every aspect of a proposal; rather, "its task is to present straightforward, succinct, and nonargumentative titles and summaries." *In re Ballot Title 1999–2000 # 246(e),* 8 P.3d 1194, 1197 (Colo. 2000).

Nevertheless, we will not hesitate to reverse the Title Board's action if an initiative contains multiple subjects that are distinct, separate, and unconnected with each other, or if the titles and summary are materially unfair or misleading to the voters. *See In re Ballot Title 1999–2000 # 258(A),* 4 P.3d 1094, 1097–98 (Colo.2000). Our responsibility is to: (1) effectuate the word choice, intent, and purpose of the General Assembly, *see In re Ballot Title 1999–2000 # 219,* 999 P.2d 819, 820 (Colo.2000); and (2) preserve and protect the right of initiative, *see id.* at 821. We construe constitutional and statutory provisions governing the initiative process in a manner that facilitates the right of initiative instead of hampering it with technical statutory provisions or constructions. *See Ballot Title # 255,* 4 P.3d at 492.

B. Circulation of Petition for Signatures

Under the relevant statutes in Title 1, Article 40, a petition may be circulated once the titles and summary for an initiative have been "fixed and determined." Specifically, section 1–40–107(4) provides:

No petition for any initiative measure shall be *circulated* nor any signature thereto have any force or effect which has been signed before the titles and submission clause have been *fixed and determined* as provided in section 1–40–106 and this section.

(Emphasis added.)

Section 1–40–106(1), 1 C.R.S. (2000) provides that the Title Board shall "designate and fix a proper fair title for each proposed law or constitutional amendment." Taken together, these provisions clarify that the Title Board, not this court, fixes and determines the titles and summary.

Proponents and opponents of an initiative, however, may petition the Title Board for a reconsideration of its determination. § 1–40–107. Therefore, the fixing and determining of titles and summary is not final until the Title Board has denied the petition for rehearing, or when the time for filing of the petition for rehearing under section 1–40–107 expires.

Accordingly, we hold that a proponent may circulate a petition once (1) the Title Board has denied the petition for rehearing, or (2) the time for filing a petition for rehearing under section 1–40–107(1) expires. At this point, the titles and summary have been finally fixed and determined.

This conclusion is supported by the absence of a provision in Title 1, Article 40, for a stay or postponement of the Title Board's action. Specifically, the Initiative and Referendum statutes do not contain any provision prohibiting a proponent from circulating a petition in reliance on the Title Board's action while an opponent is pursuing appellate review. In contrast, the State Administrative Procedure Act provides that the Title Board or the reviewing court may extend the effective date of the Title Board's action, pending judicial review, upon a finding that irreparable injury would otherwise result.[4] *See* § 24–4–106(5), 7 C.R.S. (2000).

In addition, the General Assembly's intent to advance the right of initiative is furthered by this conclusion. No prejudice to the electorate results from circulating a petition after the Title Board has taken its final action in fixing and determining the titles and summary. If an appeal occurs and we affirm, we necessarily acknowledge the validity of the Title Board's language on the petition. If we reverse, the proponent bears

the consequence of circulating a faulty petition instead of waiting for our decision. *See generally* § 1–40–111, 1 C.R.S. (2000).

In this case, proponents did not begin circulating their petition until the Title Board had denied the petitions for rehearing. We affirmed the Title Board's action, with the result that the petition signed by registered electors needed no alteration.

### C. Time for Filing Petitions with Secretary of State

■ Armstrong argues that section 1–40–107(5) prohibits circulation of the petition for signature until our appellate decision is final. We disagree. Armstrong confuses the role of the Supreme Court in reviewing the final action of the Title Board with the role of the Title Board in fixing and determining titles and summary. In addition, section 1–40–107(5) only addresses the filing of petitions with the Secretary of State, not the circulation of petitions for voter signatures. Specifically, section 1–40–107(5) provides that:

> In the event of a petition for rehearing, the period for *filing a petition* in accordance with section 1–40–108 shall not begin until a final decision concerning the motion is rendered by the title board or the Colorado supreme court.

(Emphasis added.)

Thus, section 1–40–107(5) does not prohibit *circulating* a petition during an appeal of the Title Board's action. Rather, the distinction in this section between the Title Board's "final decision" and our "final decision" pertains only to the timing of *filing* a signed petition with the Secretary of State.

Similarly, under section 1–40–108:

> No petition for any ballot issue shall be of any effect unless *filed with the secretary of state within six months from the date that the titles and submission clause have been fixed and determined* pursuant to the provisions of sections 1–40–106 and 1–40–107 and unless filed with the secretary of state within the time required by the constitu-

---

4. The State Administrative Procedure Act does not govern the Title Board's action because the initiative and referendum statute is detailed and comprehensive in regard to the Title Board's

duties,.and to the processes and procedural standards by which it carries out its unique statutory charge. *See In re Ballot Title "W.A.T.E.R.",* 831 P.2d 1301, 1306 (Colo.1992).

tion before the election at which it is to be voted upon.

(Emphasis added.)

Furthermore, section 1–40–107(5) provides that "under no circumstances shall the period for filing a petition *be extended beyond* three months prior to the election at which the petition is to be voted upon." (Emphasis added.) Clearly, the General Assembly intended, through these provisions, to extend the period for filing a signed petition with the Secretary of State by the length of time required for review by either the Title Board or the supreme court. However, no petition can be filed with the Secretary of State later than three months prior to the election at which the voters will consider it. § 1–40–107(5)[5].

Proponents filed their signed petition with the Secretary of State on August 2, 2000, three months prior to the November 7, 2000 General Election. Thus, they timely gathered the required number of valid signatures, accomplishing this in a period of less than four months. In doing so, they complied with sections 1–40–106 and 1–40–108, and the Secretary of State properly issued her sufficiency determination and her certification of the Initiative to the ballot.

### III.

Accordingly, we affirm the judgment of the District Court dismissing Armstrong's complaint against Davidson.

**5.** In an election year, as here, the timing of the Title Board's final action in fixing and determining the titles is critical to how many days the proponent then has for circulating the petition for signature, in light of the requirement that the signed petition must be filed with the Secretary of State no later than three months prior to the election. Adoption of Armstrong's argument would require the Secretary of State to disallow signed petitions simply because an opponent took an appeal, even though we decided against the opponent's challenge on appeal. Such a construction would encourage the filing of appeals solely to cut short the days otherwise available in an election year for circulating a petition for signature. We ascertain no such legislative intent. Contrary to Armstrong's argument, the effect of the general Assembly's word choice is to allow an initiative proponent to begin circulation of the petition for signature when the Title Board has taken its final action, whether or not an appeal occurs.