2014 CO 61

In the MATTER OF THE TITLE, BALLOT TITLE, AND SUBMISSION CLAUSE FOR 2013–2014 # 103.

Mizraim S. Cordero, Scott Prestidge, and Douglas Kemper, Petitioners,

v.

Phillip Doe, Barbara Mills–Bria, and Sandra Toland, Respondents,

and

Suzanne Staiert, Daniel Domenico, and Jason Gelender, Title Board.

Supreme Court Case No. 14SA137

Supreme Court of Colorado.

June 30, 2014

Attorneys for Petitioners Mizraim S. Cordero and Scott Prestidge: Ryley Carlock & Applewhite, Richard C. Kaufman, Julie A. Rosen, Sarah K. Pallotti, Denver, Colorado.

Attorneys for Petitioner Douglas Kemper: Burns, Figa & Will, P.C., Stephen H. Leonhardt, Alix L. Joseph, Wenzel J. Cummings, Greenwood Village, Colorado

Attorneys for Ballot Title Board: John W. Suthers, Attorney General, Sueanna P. Johnson, Assistant Attorney General Denver, Colorado, Sandra Jo Toland, Pro Se, Aurora, Colorado, Phillip Thomas Doe, Pro Se, Littleton, Colorado, Barbara Mills–Bria, Pro Se, Lakewood, Colorado.

JUSTICE EID delivered the Opinion of the Court.

¶ 1 In this opinion, we review the actions of the Title Board in considering challenges to the titles, ballot titles, and submission clauses of Proposed Initiative 2013–2014 # 103. After the Title Board set titles and submission clauses for the proposed initiative, the petitioners moved for a rehearing, claiming that the initiative contained more than one subject and was impermissibly vague. One of the proposed initiative's designated representatives was unable to attend the Title Board meeting at which the rehearing motion would be considered. At the suggestion of an employee of the Secretary of State's office, the designated representative offered to withdraw and substitute an alternate to attend the meeting in her place. The Title Board allowed the substitution and proceeded to deny the petitioners' motion.

¶ 2 The petitioners now appeal the Title Board's action, renewing their claims that the proposed initiative contains multiple subjects and is impermissibly vague. The petitioners also argue that Colorado statutes do not allow the substitution of an initiative's designated representative, and that the Title Board therefore did not have authority to reject their challenge at a meeting where only one of the initiative's two designated representatives was present.

¶ 3 We agree with the petitioners that the designated representative's substitution was improper. Our statutes require that designated representatives be identified at the earliest stages of the initiative process and be present throughout the Title Board's proceedings, thus facilitating the Board's ability to understand the intent and purpose of the proposed initiative. In particular, section 1–40–106(4)(d), C.R.S. (2013) provides that if either designated representative is absent from the Title Board meeting, "the title board may consider the ballot issue at its next meeting." Thus, the legislature has already provided a remedy for a situation like this one, where the designated representative is unable to attend a Title Board meeting—namely, to postpone consideration of the proposed initiative to the Board's next meeting. In this case, however, the Title Board did not postpone its considerations, but instead allowed for a substitution of the designated representative. It therefore acted without authority when it considered the challenges on rehearing related to the proposed initiative in the absence of one of the initiative's designated representatives. Because we find that the Title Board lacked authority to act on the motion, we need not consider the petitioners' claims that the initiative was vague or addressed more than one subject.

¶ 4 Accordingly, we reverse the Title Board's action and return the measure to the Title Board for further proceedings consistent with this opinion.

## I.

¶ 5 Proposed Initiative 2013–2014 # 103 seeks to add a new section to Article XVI of the Colorado Constitution that would establish the public trust doctrine for the state's natural resources. Its provisions would declare Colorado's environment as common property and impose fiduciary obligations on the state government; criminalize the manipulation of data, reports, or scientific information in an attempt to use public trust resources for private profit; and apply these provisions retroactively to previously permitted activities and transactions, regardless of the date of any applicable local, state, or federal permits.[1]

¶ 6 When the draft of the proposed initiative was first submitted, it listed the names and addresses of respondents Phillip Doe and Barbara Mills–Bria, the initiative's designated representatives, along with its proposed language. Both Doe and Mills–Bria were present at the first meeting in which the Title Board considered the initiative. At that meeting, Doe and Mills–Bria submitted affidavits to the Title Board with the information they were required to provide in order to serve as the proposed initiative's designated representatives. After receiving these affidavits, the Title Board set a title for the proposed initiative.

¶ 7 Petitioners Mizraim S. Cordero and Scott Prestidge subsequently filed a motion for rehearing pursuant to section 1–40–107(1)(a), C.R.S. (2013). In their motion, they asserted that the proposed initiative violates the requirement that initiatives address no more than one subject. They also argued that the proposed initiative's title was confusing and misleading, and that it failed to reflect the true intent of its proponents. Petitioner Douglas Kemper also filed a motion for rehearing, raising similar claims.

¶ 8 These motions were to be heard at the Title Board's next scheduled meeting. Mills–Bria was unable to attend this meeting, however, because she was traveling out of state to attend a funeral. Following the advice of an employee in the Secretary of State's office, Mills–Bria, Doe, and respondent Sandra Toland submitted signed and notarized forms and affidavits to the Title Board purporting to substitute Toland for Mills–Bria as a designated representative for the proposed initiative. The Title Board accepted these forms and permitted the substitution. It then considered and denied the petitioners' motions, affirming its prior decision to set title.

¶ 9 The petitioners then filed petitions for review in this Court, renewing their claims that the initiative contains more than one subject and is impermissibly vague. In addition, they argue that the Title Board had no jurisdiction to rule against their motions because Mills–Bria, one of the initiative's designated representatives, was not present at the rehearing motion, notwithstanding the respondents' substitution of Toland in Mills–Bria's place.

## II.

¶ 10 We need not consider whether Proposed Initiative 2013–2014 # 103 contains multiple subjects or is impermissibly vague because we agree with the petitioners that Toland's substitution for Mills–Bria as a designated representative was improper. There was therefore only one designated representative present at the meeting in which the Title Board considered the rehearing motions. As such, the Title Board lacked authority to take action with respect to the challenged title.

¶ 11 The question of whether the Title Board had authority to act on the rehearing motions in this case is a matter of statutory interpretation, and thus "a question of law subject to de novo review." *MDC Holdings, Inc. v. Town of Parker*, 223 P.3d 710, 717 (Colo.2010).

¶ 12 When an initiative's proponents submit the draft containing its proposed text, they must also "designate the names and mailing addresses of two persons who shall represent the proponents in all matters af-

---

1. See the appendix to this decision for the text of the proposed initiative and the title and submis-

sion clause that the Board adopted for the ballot.

fecting the petition and to whom all notices or information concerning the petition shall be mailed." § 1–40–104, C.R.S. (2013). During the first Title Board meeting at which the Board considers their initiative, these designated representatives must certify by a notarized affidavit that they are familiar with the statutory requirements for the initiative process and provide a physical address at which process may be served upon them. § 1–40–106(4)(b). "*Each* designated representative" is also required to "appear at any title board meeting at which the designated representative's ballot issue is considered." § 1–40–106(4)(a) (emphasis added). "[I]f either designated representative of the proponents fails to appear at a title board meeting," then the Board "may consider the ballot issue at its next meeting, but the requirements of this subsection (4) shall continue to apply." § 1–40–106(4)(d).

¶ 13 As we recently held, a rehearing motion to address challenges to titles previously set qualifies as a "Title Board meeting" for the purposes of section 1–40–106(4), which therefore requires both designated representatives to appear at the rehearing. *Hayes v. Ottke,* 2013 CO 1, ¶ 5, 293 P.3d 551. If "fewer than both designated representatives appear at a rehearing, the Title Board lacks authority to take action with respect to the challenged titles," and we will reverse the action of the Title Board. *Id.*

¶ 14 Here, Mills–Bria and Doe were designated as the proposed initiative's representatives on its draft. They served in this capacity during the first Title Board meeting to consider the initiative, at which time they submitted the affidavits and information required of them in section 1–40–104(4)(b). At the subsequent meeting considering the rehearing motion, however, Mills–Bria was absent, though she and Doe, acting on the advice of an employee of the Secretary of State's office, submitted affidavits and documents purporting to substitute Toland in her place.

¶ 15 The question here, then, is whether Mills–Bria remained the initiative's designated representative in spite of the attempt to provide an alternate for her while she was out of the state. If so, then the Title Board had no authority to act in her absence. If the substitution was valid, on the other hand, then with two designated representatives present, the Title Board could proceed to consider, and deny, the rehearing motion.

¶ 16 We find no statutory provision that would authorize this substitution. To the contrary, our statutes require (1) the designation of representatives at the earliest stages of the initiative process, § 1–40–104; (2) the presentation of the designated representatives' qualifications at the first meeting with the Title Board at which their initiative is considered, § 1–40–106(4)(b); [2] and (3) the designated representatives' attendance at each subsequent Title Board meeting, § 1–40–106(4)(a). Thus, the clear intent of the General Assembly is to require the designated representatives' continued, uninterrupted involvement throughout the proceedings before the Title Board. This requirement, as we have previously held, "furthers the information-gathering purpose of the Title Board's public meetings and facilitates its ability to fully understand the intent and purposes of the proposed initiatives considered at such meetings by requiring the designated representatives to be available to explain the measures and answer the Board's questions." *Hayes,* ¶ 22. Allowing for the substitution of alternates while proceedings are ongoing would disrupt the continuity that the statutes call for, thereby impairing the Title Board's functions and frustrating the aims of the General Assembly.

¶ 17 The Title Board argues that in the face of statutory silence on the issue of substitution of a designated representative, these statutes should be interpreted "in favor of the right of initiative to allow for substitutions," citing *Armstrong v. Davidson,* 10 P.3d 1278, 1283 (Colo.2000). But the Title Board's premise is incorrect. The statutes are not

---

**2.** The Title Board suggests that this section can be interpreted to mean the first meeting that the substituted designated representative attends. This interpretation, however, presumes that substitution is proper, which we do not find. More-over, this interpretation contradicts the plain language of section 1–40–106(4)(b), which requires the presentation of the required materials "at the first title board meeting at which the designated representative's ballot issue is considered."

silent. On the contrary, the General Assembly, recognizing that a designated representative might not be able to attend a given Title Board meeting (and thus contemplating the exact situation giving rise to this case) provided a remedy—namely, to postpone consideration of the proposed initiative to the Board's next meeting. In doing so, the legislature chose to allow a delay in the process rather than permit the Title Board to proceed without the continued involvement of the designated representatives who had participated in the process from the beginning.

¶ 18 The respondents point to the fact that they relied upon the representation of an employee of the Secretary of State's office that they could substitute a representative in place of Mills–Bria. But the designated representatives' required attendance concerns the authority of the Title Board to act. In the absence of either designated representative, the General Assembly removes that authority from the Title Board. *Hayes*, ¶¶ 24–25. Just as a court's lack of subject matter jurisdiction cannot be waived at any stage of the proceedings before it, *Town of Carbondale v. GSS Properties, LLC*, 169 P.3d 675, 681 (Colo.2007), neither the Secretary of State, the Title Board, nor the parties involved in a challenge to a proposed initiative may give the Board authority that the General Assembly withheld.

¶ 19 Finally, the Title Board argues that we should recognize the need for substitutions because in some future case, a designated representative's inability to attend a Board meeting might not be temporary, as was the case here. They postulate, for example, a case in which a disability prevents the designated representative's further participation in the process. Such a circumstance, the Board contends, should not prevent a proposed initiative's proponents from moving forward.

¶ 20 But this is not the type of circumstance before us in this case. Here, Mills–Bria was absent from the rehearing so she could attend an out-of-state funeral. Nothing in the facts before us suggests that her inability to attend the Title Board meeting was the result of anything more than a temporary scheduling conflict. Thus, we need

not consider what alternative procedures may be necessary when a designated representative is unable to proceed in the process. It is sufficient here to observe that the General Assembly has already directly answered the question of what must be done when a designated representative is unable to attend a Title Board meeting. In this case, rather than permit the substitution of an alternate, the Title Board should have waited to consider the rehearing motion until its next meeting, as the General Assembly explicitly required it to do.

■ ¶ 21 In sum, the General Assembly intended for a proposed initiative's designated representatives to be continuously involved in each phase of the proceedings before the Title Board. Allowing for the substitution of a designated representative would frustrate this intent. In fact, the legislature provided a remedy for a situation like this one, where the designated representative is unable to attend a meeting of the Title Board—namely, to postpone consideration of the proposed initiative to the Board's next meeting. We therefore find that section 1–40–106 does not permit the substitution of a designated representative when the individual selected as the designated representative at the initial stages of the initiative process is unable to attend a Title Board meeting.

### III.

¶ 22 For the reasons stated above, we reverse the Title Board's action and return the measure to the Title Board for further proceedings consistent with this opinion.

JUSTICE MÁRQUEZ dissents, and JUSTICE BOATRIGHT and JUSTICE HOOD join in the dissent.

APPENDIX—Initiative # 103 and Titles

Be it Enacted by the People of the State of Colorado:

**SECTION 1.** In the constitution of the state of Colorado, add section 9 to article XVI as follows:

**Section 9. The state's duties under the public trust doctrine to secure the rights**

**of the people to protect natural resources.**
(I) THE PEOPLE OF COLORADO HAVE AN INALIENABLE RIGHT TO CLEAN AIR, CLEAN WATER, INCLUDING GROUND AND SURFACE WATER, AND THE PRESERVATION OF THE ENVIRONMENT AND NATURAL RESOURCES, REFERRED TO IN THIS SECTION AS "PUBLIC TRUST RESOURCES" ON WHICH WE ALL DEPEND AND THAT PROVIDE FOR THE HEALTH, SAFETY, AND HAPPINESS OF ALL NATURAL PERSONS, INCLUDING FUTURE GENERATIONS. PUBLIC TRUST RESOURCES ARE THE COMMON PROPERTY OF ALL THE PEOPLE, INCLUDING GENERATIONS YET TO COME. AS TRUSTEE OF THESE RESOURCES, THE STATE SHALL CONSERVE AND MAINTAIN THEM FOR THE BENEFIT OF ALL THE PEOPLE.

(2) THE STATE GOVERNMENT AND ITS AGENTS, AS TRUSTEES, SHALL PROTECT PUBLIC TRUST RESOURCES AGAINST SUBSTANTIAL IMPAIRMENT, INCLUDING POLLUTION FROM EXTERNAL SOURCES. IN SATISFYING THE STATE'S TRUST RESPONSIBILITIES, THE PRECAUTIONARY PRINCIPLE SHALL ALWAYS BE APPLIED; IF AN ACTION OR POLICY HAS A SUSPECTED RISK OF SUBSTANTIALLY IMPAIRING PUBLIC TRUST RESOURCES, IN THE ABSENCE OF SCIENTIFIC CONSENSUS THAT THE ACTION OR POLICY IS HARMFUL, THE BURDEN OF PROOF THAT IT IS NOT HARMFUL FALLS ON THOSE PROPOSING TO TAKE THE ACTION. THE STATE SHALL SEEK NATURAL RESOURCE DAMAGES FROM THOSE ENTITIES THAT CAUSE SUBSTANTIAL IMPAIRMENT OF PUBLIC TRUST RESOURCES AND USE SUCH FUNDS TO REMEDIATE THE HARM.

(3) ANY COLORADO CITIZEN, AS A BENEFICIARY OF PUBLIC TRUST RESOURCES, MAY PETITION A COURT OF COMPETENT JURISDICTION TO DEFEND AND PRESERVE SUCH RESOURCES AGAINST SUBSTANTIAL IMPAIRMENT AND TO ENSURE THAT THE STATE IS MEETING ITS OBLIGATIONS TO PRUDENTLY MANAGE SUCH RESOURCES AS A TRUSTEE. REMEDIES MAYBE GRANTED IN BOTH LAW AND EQUITY. IF A COURT FINDS THAT THE STATE HAS NOT FULFILLED ITS DUTIES AS TRUSTEE, CITIZENS ARE ENTITLED TO RECOVER ALL COSTS OF LITIGATION, INCLUDING EXPERT AND ATTORNEY FEES.

(4) THE FIDUCIARY DUTY OF THE STATE AS TRUSTEE REQUIRES IT TO USE THE BEST SCIENCE AVAILABLE IN ANY PROCESS OR PROCEEDING IN WHICH PUBLIC TRUST RESOURCES MAY BE AFFECTED. ANY PERSON, CORPORATION, OR OTHER ENTITY FOUND TO BE MANIPULATING DATA, REPORTS, OR SCIENTIFIC INFORMATION IN AN ATTEMPT TO UTILIZE PUBLIC TRUST RESOURCES FOR PRIVATE PROFIT SHALL BE REFERRED FOR PROSECUTION FOR ANY CRIMINAL OFFENSES THAT MAY APPLY IN ADDITION TO OTHER PENALTIES THE STATE MAY IMPOSE, INCLUDING LOSS OF CHARTER TO OPERATE IN THE STATE.

(5) THIS SECTION IS SELF–ENACTING AND SELF–EXECUTING AND SHALL APPLY TO A PUBLIC ACTION OR COMMERCIAL DEALING THAT WOULD VIOLATE IT, REGARDLESS OF THE DATE OF ANY APPLICABLE LOCAL, STATE, OR FEDERAL PERMITS.

(6) LAWS MAYBE ENACTED TO ENHANCE, BUT CANNOT BE CONTRARY TO, THE PROVISIONS OF THIS SECTION.

**The title as designated and fixed by the Board is as follows:**

An amendment to the Colorado constitution concerning public ownership of natural and environmental resources, and, in connection therewith, creating a public trust in those resources, which include clean air, clean water, and the preservation of the environment and natural resources; re-

quiring the state, as trustee, to conserve and maintain public trust resources by using the best science available to protect them against any substantial impairment, regardless of any prior federal, state, or local approval; seeking natural resource damages from anyone who substantially impairs them, and using damages obtained to remediate the impairment; allowing Colorado citizens to file enforcement actions in court; requiring anyone who is proposing an action or policy that might substantially impair public trust resources to prove that the action or policy is not harmful; and criminalizing the manipulation of data, reports, or scientific information in an attempt to use public trust resources for private profit.

**The ballot title and submission clause as designated and fixed by the Board is as follows:**

Shall there be an amendment to the Colorado constitution concerning public ownership of natural and environmental resources, and, in connection therewith, creating a public trust in those resources, which include clean air, clean water, and the preservation of the environment and natural resources; requiring the state, as trustee, to conserve and maintain public trust resources by using the best science available to protect them against any substantial impairment, regardless of any prior federal, state, or local approval; seeking natural resource damages from anyone who substantially impairs them, and using damages obtained to remediate the impairment; allowing Colorado citizens to file enforcement actions in court; requiring anyone who is proposing an action or policy that might substantially impair public trust resources to prove that the action or policy is not harmful; and criminalizing the manipulation of data, reports, or scientific information in an attempt to use public trust resources for private profit?

JUSTICE MÁRQUEZ, dissenting.

¶ 23 Today the majority concludes that initiative and referendum statutes preclude the substitution of a proposed initiative's designated representative. The majority does not rely on any statutory provision that expressly prohibits substitution—indeed, no such provision exists. Instead, the majority concludes that because section 1–40–106(4)(d), C.R.S. (2013), permits the Title Board to postpone consideration of a proposed initiative when the designated representative fails to appear at a Title Board meeting, the legislature intended to foreclose any substitution of a designated representative. By reading into the statutes a prohibition on the substitution of a designated representative where no such prohibition exists, the majority disregards our obligation to "construe constitutional and statutory provisions governing the initiative process in a manner that facilitates the right of initiative." *Armstrong v. Davidson*, 10 P.3d 1278, 1282 (Colo.2000). Moreover, the majority fails to appreciate the inadequacy of its proposed remedy. The majority places a designated representative in the position of having to choose between missing a family member's funeral or effectively abandoning a proposed initiative. I do not believe that the statutes mandate such a lose-lose choice, nor is such a statutory construction consistent with this court's duty to protect the voters' fundamental right to the initiative process. Finally, the majority ignores the practical effects of an outright ban on substitution on the efficiency of the Title Board review process. For these reasons, I respectfully dissent.

**I.**

¶ 24 This court has long recognized that the "right of initiative and referendum, like the right to vote, is a fundamental right under the Colorado Constitution." *Loonan v. Woodley*, 882 P.2d 1380, 1383 (Colo.1994). To give full effect to this fundamental right, "the initiative process should be liberally construed so that the constitutional right reserved to the people may be facilitated and not hampered by either technical statutory provisions or technical construction thereof." *Id.* (internal quotation marks and alterations omitted). In other words, "[t]he initiative law favors placing matters before the voters," *Armstrong v. Davidson*, 10 P.3d 1278, 1281 (Colo.2000), and we should not create

procedural hurdles that conflict with or detract from the voters' "guarantee of participation in the political process." *Loonan,* 882 P.2d at 1383. Indeed, the General Assembly, in enacting the initiative and referendum statutes, expressly declared that "it is not the intention of this article to limit or abridge in any manner the powers reserved to the people in the initiative and referendum, but rather to properly safeguard, protect, and preserve inviolate for them these modern instrumentalities of democratic government." § 1–40–101(1), C.R.S. (2013).

¶ 25 I agree with the majority that the "statutes require that designated representatives be identified at the earliest stages of the initiative process." Maj. op. ¶ 3. I also agree that no statutory provision expressly authorizes substitution.[1] Maj. op. ¶ 16. Given this statutory silence on substitution, I disagree with the majority that the "the *clear intent* of the General Assembly is to require the designated representatives' continued, uninterrupted involvement throughout the proceedings before the Title Board." Maj. op. ¶ 16 (emphasis added). We have previously held that where the initiative and referendum statutes are silent regarding a procedural detail, they should be construed so as to advance the right of initiative. *See Armstrong,* 10 P.3d at 1283 (holding that proponents were permitted to circulate a petition during the pendency of appellate review because "the Initiative and Referendum statutes do not contain any provision prohibiting a proponent from circulating a petition in reliance on the Title Board's action while an opponent is pursuing appellate remedy"). In my view, the majority's prohibition on substitution is inconsistent with our approach in *Armstrong* and creates an unnecessary impediment to the voters' fundamental right of initiative.

¶ 26 The majority reasons that "the statutes are not silent" on the issue of substitution because section 1–40–106(4)(d), C.R.S. (2013), provides that if a designated representative is not present for a meeting of the Board, the Board may consider the ballot issue at its next meeting. Maj. op. ¶ 17. However, in relying on section 1–40–106(4)(d), the majority conflates the duties required of an individual once he or she becomes a designated representative with the procedures for becoming a designated representative in the first place. Section 1–40–106(4)(d) authorizes the Title Board to delay consideration of a measure when a designated representative fails to fulfill his or her statutory duty to attend the Title Board meeting. But, section 1–40–106(4)(d) does not address whether, and under what circumstances, an individual may be *substituted* for a designated representative.

¶ 27 The only provision in the initiative and referendum statutes describing how a person becomes a designated representative appears in section 1–40–104, C.R.S. (2013), which states that "[a]t the time of filing of a draft ... the proponents shall designate the names and mailing addresses of two persons who shall represent the proponents in all matters affecting the petition...." Section 1–40–106(4)(a) requires that "[e]ach designated representative of the proponents shall appear at any title board meeting at which the designated representative's ballot issue is considered." In *Hayes v. Ottke,* 2013 CO 1, ¶ 19, 293 P.3d 551, 556, we construed the phrase "each designated representative" in section 1–40–106(4)(a) to require *both* designated representatives to appear at a rehearing before the Title Board. We reasoned that subsection (4)(a) furthers the information-gathering purpose of the Title Board's public meetings and facilitates its ability to understand the intent and purpose of a proposed initiative by requiring the designated representatives to be available to explain the initiative and answer the Title Board's questions. *Hayes,* ¶ 22, 293 P.3d at 556. However, our concern in *Hayes* was not with the procedure for becoming a designated representative, but only with ensuring that the Title Board had access to the information and perspective of the designated represen-

---

1. I note, however, that the Secretary of State is statutorily required to prepare a summary of the designated representatives' responsibilities. § 1–40–106(4)(c), C.R.S. (2013). The summary of responsibilities prepared by the Secretary contains a section entitled "Withdrawing as a Designated Representative," which provides procedures for the withdrawal and replacement of a designated representative. Respondents fully complied with these procedures.

tatives in order to carry out its title-setting function.[2] *Cf. id.* at ¶ 26, 293 P.3d at 557 ("In the absence of the designated representatives, the Board was left to rely on the statement of an objector. . . ."). In short, our holding in *Hayes*, including our conclusion that section 1–40–106(4)(a)'s attendance requirement was "unambiguous and inflexible," concerned the duties of individuals already serving as designated representatives, but did not purport to address how (or when) an individual may become a designated representative.

¶ 28 The real question before us is whether an individual who was not designated a representative "[a]t the time of any filing of a draft," but who nonetheless meets all other requirements to become a designated representative—including, certifying by notarized affidavit that he or she is familiar with the provisions governing initiatives as well as the Secretary of State's summary of responsibilities—may be considered a designated representative under the statute. *See* § 1–40–106(4)(b)–(c). The Title Board's ability under section 1–40–106(4)(d) to postpone consideration of an initiative until a later meeting certainly serves as a remedy where an existing designated representative cannot fulfill his or her statutory duty to attend a scheduled Title Board meeting. But that provision does not, either by its plain language or read in context of the initiative and referendum statutes, address whether a designated representative may withdraw and be replaced by a new designated representative who *can* attend the Title Board meetings. Given the statutory silence on this question, and our obligation to "construe constitutional and statutory provisions governing the initiative process in a manner that facilitates the right of initiative," *Armstrong v. Davidson,* 10 P.3d 1278, 1282 (Colo.2000), I would not construe these provisions to forbid substitution.

¶ 29 I also disagree with the majority's conclusion that the Title Board's ability under section 1–40–106(4)(d) to "consider the ballot issue at its next meeting" serves as an adequate remedy for a designated representative's inability to attend a meeting. As a practical matter, this "remedy" is unavailable where—as here—the rehearing is conducted at or after the Board's last regularly scheduled meeting for an election cycle. The Title Board "season" is quite short: by statute, the Title Board's first meeting may be held no sooner than "the first Wednesday in December after an election," and the last meeting must commence no later than "the third Wednesday in April" in the year in which the measure would be presented to voters. § 1–40–106(1). Under the majority's formulation, where an initiative is scheduled for consideration at the Title Board's last meeting in an election cycle, a designated representative who cannot attend the meeting for legitimate purposes is left without a remedy because the proposed initiative cannot be considered at a later date and still be included on the ballot that year. Here, the rehearing on the proposed initiative was conducted at a continuation of the Title Board's last regularly scheduled meeting for the 2013–2014 election cycle. Because the majority concludes that substitution of designated representatives is forbidden, Mills–Bria was faced with a choice between forgoing a family member's funeral or effectively abandoning the initiative she represented because the Title Board could not set a title in her absence. In my view, the majority's approach is inconsistent with this court's obligation to liberally construe the constitutional and statutory provisions governing the initiative process to facilitate, not hamper, this constitutional right reserved to the people. *Fabec v. Beck,* 922 P.2d 330, 341 (Colo.1996); *Loonan,* 882 P.2d at 1384.

¶ 30 Finally, I disagree with the majority's view that allowing substitution would "disrupt the continuity that the statutes call for, thereby impairing the Title Board's functions and frustrating the aims of the General Assembly." Maj. op. ¶ 16. The majority asserts that section 1–40–106(4)(d) demonstrates the legislature's intent to ensure con-

2. The record reflects that Sandra Toland, the "substituted" representative, not only complied with the procedures in the Secretary of State's summary, but also satisfied the affidavit requirement of section 1–40–106(4)(c). Toland actively participated in the rehearing and answered questions from the Title Board. Nothing in the record before us indicates that Toland was inadequately prepared or that she lacked the knowledge to provide guidance to the Title Board.

tinuity in the proceedings by requiring the continued, uninterrupted involvement of the designated representatives. Maj. op. ¶ 16. Yet the majority fails to demonstrate how section 1–40–106(4)(d) (permitting the Title Board to consider a ballot issue at its next meeting) necessarily forbids substitution, so long as a formally designated representative can appear at the meeting. By prohibiting formal substitution of a designated representative, the majority actually hampers the ballot title process by postponing the consideration of a proposed initiative. If anything, permitting the formal substitution of a designated representative prior to a Title Board meeting—as happened here—promotes efficiency and ensures continuity in the process by allowing timely consideration of a proposed initiative and avoiding delay.

## II.

¶ 31 The right of initiative and referendum, like the right to vote, is a fundamental right under the Colorado Constitution. Where, as here, the initiative and referendum statutes are silent on a particular point of procedure, we have made clear that we should liberally construe these provisions to give full effect to the constitutional right reserved to the people. *See Armstrong*, 10 P.3d 1278, 1283 (Colo.2000). By construing statutory silence to prohibit the formal substitution of a designated representative, the majority instead hampers this constitutional right. For these reasons, and because I otherwise would reject the Petitioners' challenges to the title set by the Title Board, I would affirm the Title Board's actions. Accordingly, I respectfully dissent.

I am authorized to state that JUSTICE BOATRIGHT and JUSTICE HOOD join in this dissent.