Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us. Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
January 13, 2020

**2020 CO 5**

**No. 19SA88,** *In re Ballot Title #74,* **& No. 19SA89,** *In re Ballot Title #75*—**Title Setting—Single Subject Requirement—Jurisdiction—Ballot Initiatives— Motion for Rehearing.**

This original proceeding arises from the Title Board's determination that it lacked jurisdiction pursuant to section 1-40-107(1)(c), C.R.S. (2019) to consider Petitioner's motion for a second rehearing proceeding regarding Proposed Ballot Initiative 2019–2020 #74 and Proposed Ballot Initiative 2019–2020 #75.

The supreme court holds that the statement in the statute governing ballot title setting that "[t]he decision of the title board on any motion for rehearing shall be final, except as provided in subsection (2) of this section, and no further motion for rehearing may be filed or considered by the title board" means that a proposed initiative is subject to only one rehearing proceeding before the Title Board. The Board correctly determined that it lacked jurisdiction to consider a motion for a second rehearing.

Accordingly, the actions of the title board are affirmed.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 5

**Supreme Court Case Nos. 19SA88, 19SA89**
*Original Proceeding Pursuant to § 1-40-107(2), C.R.S. (2019)*
Appeal from the Ballot Title Setting Board

In the Matter of the Title, Ballot Title and Submission Clause for 2019–2020 #74

and

In the Matter of the Title, Ballot Title and Submission Clause for 2019–2020 #75

**Petitioner:**

Kenneth Nova,

v.

**Respondents:**

Monica R. Colbert and Juliet Sebold,

and

**Title Board:**

Ben Schler, LeeAnn Morrill, and Jason Gelender.

**Title Board Action Affirmed**
*en banc*
January 13, 2020

**Attorneys for Petitioner:**
Recht Kornfeld, P.C.

Mark G. Grueskin
    *Denver, Colorado*

**Attorneys for Respondents:**
Ireland Stapleton Pryor & Pascoe, PC
William A. Hobbs
Benjamin J. Larson
    *Denver, Colorado*

**Attorneys for Title Board:**
Philip J. Weiser, Attorney General
Michael Kotlarczyk, Assistant Attorney General
    *Denver, Colorado*

**JUSTICE HART** delivered the Opinion of the Court.
**JUSTICE GABRIEL** dissents, and **CHIEF JUSTICE COATS** and **JUSTICE SAMOUR** join in the dissent.

¶1 Title 1, Article 40 of the Colorado Revised Statutes sets out an elaborate process by which citizens who want to propose amendments to state laws or the constitution may seek to place their proposed initiatives on the ballot for a vote. In this original proceeding, we are asked to decide whether a statement in section 1-40-107(1)(c), C.R.S. (2019), of this detailed scheme—that "[t]he decision of the title board on any motion for rehearing shall be final, except as provided in subsection (2) of this section, and no further motion for rehearing may be filed or considered by the title board"—means what it says. We conclude that it does. Section 1-40-107 contemplates only a single Title Board rehearing on a proposed initiative title. We therefore affirm the decision of the Title Board declining to consider a motion for a second rehearing on Proposed Initiative 2019–2020 #74 and Proposed Initiative 2019–2020 #75.

## I. Facts and Procedural History

¶2 In April 2019, Monica Colbert and Juliet Sebold sought to have titles set for eight ballot initiatives. Each of the proposed initiatives was designed to create an "Expanded Learning Opportunities Program" for Colorado children, but each included a different funding mechanism. The Title Board held a hearing on the eight initiatives on April 17, 2019, and made title determinations for the six initiatives not at issue here. The Title Board declined to set titles for Proposed

4

Initiatives #74 and #75 after concluding that both proposed initiatives contained multiple subjects in violation of the Colorado Constitution.

¶3 Colbert and Sebold filed a motion for rehearing arguing that Proposed Initiatives #74 and #75 each contained a single subject and that the Title Board should not have refused to set titles for the two proposals. At the same time, Kenneth Nova ("Petitioner") filed a motion for rehearing regarding the Title Board's decision to set titles in two of the other six related initiatives.

¶4 The Title Board held a rehearing on the proposed initiatives on April 26, 2019. As relevant here, the Title Board reversed its previous decision on the single-subject issue and proceeded to set titles for Proposed Initiatives #74 and #75. Neither Petitioner, nor his counsel who was present at the rehearing, voiced any objection to the Title Board's decision to reverse its earlier determination or to any aspect of the titles ultimately set for the two initiatives.

¶5 On April 29, Petitioner filed a motion for rehearing, seeking reconsideration of the titles set at the April 26 rehearing for Proposed Initiatives #74 and #75. The Title Board declined to hold a second rehearing, concluding that it lacked jurisdiction to consider Petitioner's motion because of the statutory command that, following a Board decision on rehearing, "no further motion for rehearing may be filed or considered by the title board." § 1-40-107(1)(c).

¶6 These appeals followed.

## II. Analysis

¶7 After setting forth the standard of review, we consider whether the language of section 1-40-107(1)(c) is clear and unambiguous. Although the language of that provision is clear and is consistent with the overall statutory scheme in permitting only a single rehearing on any proposed initiative, we consider in turn the arguments Petitioner advances to suggest statutory ambiguity. We then turn to the legislative history of the 2012 amendment adding the disputed language and conclude based on this history that the intent of the legislature was to limit the number of rehearing proceedings before the Title Board to only one on a proposed initiative. We therefore affirm the conclusion of the Title Board that it lacked jurisdiction to consider Petitioner's motion for a second rehearing on Proposed Initiatives #74 and #75.

### A. Standard of Review

¶8 Whether the Title Board had jurisdiction to consider Petitioner's motion for rehearing is a question of statutory interpretation and is subject to de novo review. *See In re Title, Ballot Title, & Submission Clause for 2013–2014 #103*, 2014 CO 61, ¶ 11, 328 P.3d 127, 129. Our primary responsibility in interpreting any statute is to "give effect to the legislative purpose underlying its enactment." *In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 #219*, 999 P.2d 819, 820 (Colo. 2000). Therefore, if the language of the statute "is clear and unambiguous on its face,

there is no need to apply rules of statutory construction because it may be presumed that the legislature meant what it clearly said." *Id.* If a statute is ambiguous, we "construe [it] in light of the General Assembly's objective, employing the presumption that the legislature intended a consistent and sensible effect." *Id.* at 820–21.

## B. Rehearing Before the Title Board

¶9 The process for a motion for rehearing of an initial decision of the Title Board is set forth in section 1-40-107. This section explains that any proponent of an initiative or any registered elector who disagrees with the Title Board's decision as to whether the initiative meets the constitutional single-subject requirement or who is not satisfied with the titles set by the Board may file a motion for rehearing. *See* § 1-40-107(a)(1)(I). It sets out a timeline for the filing and consideration of any motions for rehearing. *See id.* (a motion must be filed within seven days of the initial decision); § 1-40-107(1)(c) (a motion will generally be considered at the next meeting of the Title Board). And it details what kinds of claims can be made in motions for rehearing. *See* § 1-40-107(1)(b).

¶10 Finally, this section provides that "[t]he decision of the title board on any motion for rehearing shall be final, except as provided in subsection (2) of this section, and no further motion for rehearing may be filed or considered by the title board." § 1-40-107(1)(c). The exception provided in subsection (2) permits the

proponents of an initiative, any elector who filed a petition for rehearing, or any other registered elector who appeared at the rehearing and supported or opposed an initiative to file an appeal with this court within seven days, seeking review of the Title Board's decision. § 1-40-107(2). Together, section 1-40-107(1)(c) and section 1-40-107(2) establish unambiguously that the only recourse available to a person who objects to the Title Board's decision on rehearing is to petition this court for review. Filing a new motion for rehearing with the Title Board after the Board has made its rehearing decision is foreclosed by the statute's plain language.

¶11 This prohibition on holding a second rehearing proceeding before the Title Board regarding a proposed initiative is consistent with the "stringent time restraints [that] are placed on the proponents and opponents of initiatives, as well as on the Title Board" in order to ensure that initiative proponents have sufficient time to collect signatures and the public has time to consider the proposed initiative. *In re 1999–2000 #219*, 999 P.2d at 821. Consequently, similar time limits are pervasive in the statutory process for citizen-proposed amendments to our laws or constitution. The Office of Legislative Legal Services, the first stop on a proposed initiative's path, is obligated to complete its review within two weeks of receiving the proposal. § 1-40-105(1), C.R.S. (2019). The proposal then travels to the Secretary of State's office, which must present it to the Title Board. § 1-40-106(1), C.R.S. (2019). The Title Board sits only from the first Wednesday in

December to the third Wednesday in April each year. *Id.* After the Title Board considers the proposal, anyone objecting to its initial decision must file a motion for rehearing within seven days. § 1-40-107(1)(a). The rehearing is generally held no more than seven days later, at the next regularly scheduled meeting of the Title Board. § 1-40-107(1)(c). This ensures that "[t]he title for the proposed law or constitutional amendment . . . shall be completed, except as otherwise required by section 1-40-107, within two weeks after the first meeting of the title board" on the proposed initiative. § 1-40-106(b). Finally, anyone who appeared at the rehearing and objects to the decision of the Title Board on rehearing, whether or not that person had himself filed a motion for rehearing, may file an appeal with this court within seven days, and we are directed to resolve the objection "promptly." § 1-40-107(2). In the context of this expedited process, prohibiting multiple rehearing proceedings before the Title Board and instead requiring proponents and objectors to direct their concerns to this court is not only what the statute provides, it is also quite reasonable.

### C. Petitioner's Arguments for Statutory Ambiguity

¶12 Petitioner makes three arguments to counter what appears to be a clear statutory prohibition on successive motions for rehearing leading to successive rehearing proceedings. First, he argues that section 1-40-107(1)(c) should be read to prohibit "further" motions for rehearing only from a person who has already

9

filed a first motion for rehearing. Second, and relatedly, he argues that certain language in section 1-40-107(1)(a) must be read to permit successive motions. And third, he argues that prohibiting multiple rehearing proceedings would lead to absurd results. We consider each of these arguments in turn.

¶13 Petitioner first argues that in amending section 1-40-107(1)(c) in 2012 to provide that "no further motion for rehearing may be filed or considered by the title board," the legislature only intended to bar the same objector from filing serial motions for rehearing. In support of this position, he points to two earlier decisions from this court in which we held that the same objector could not file multiple motions for rehearing. *See In re 1999–2000 #219*, 999 P.2d at 822; *In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 #215*, 3 P.3d 447, 448 (Colo. 2000). Petitioner argues that section 1-40-107(1)(c) should be understood to have essentially codified these decisions.

¶14 But that is not what the language in the statute provides. If the legislature had intended to impose a prohibition on serial motions for rehearing by the same objector, it could easily have done so. Instead, section 1-40-107(1)(c) states that "*[t]he decision of the title board on any motion for rehearing shall be final*, except as provided in subsection (2) of this section, *and no further motion for rehearing may be filed or considered by the title board*," (emphases added), with no qualification on that

10

prohibition other than its reference to the right of review provided in section 1-40-107(2).

¶15    Second, Petitioner argues that section 1-40-107(1)(c) must be understood to permit more than one petition for rehearing when, as here, the title is not set until the first rehearing.    His argument rests on an interpretation of section 1-40-107(1)(a)(I), which provides that

> [a]ny person presenting an initiative petition or any registered elector who is not satisfied with a decision of the title board with respect to whether a petition contains more than a single subject . . . or who is not satisfied with the titles and submission clause provided by the title board . . . may file a motion for a rehearing . . . within seven days after the decision is made or the titles and submission clause are set.

¶16    Petitioner contends that the final words of this subsection make the setting of title a precondition to the filing of a motion for rehearing regarding the title ultimately set because a motion for rehearing can only be filed "within seven days after . . . the titles and submission clause are set." Thus, Petitioner argues, he must be permitted to file a motion for a second rehearing when, as here, the titles are not set until the first rehearing.

¶17    We disagree. Assuming arguendo that Petitioner's argument is correct, then the statute must also be read to make the Title Board's decision on the single-subject question a precondition to any challenge of that decision. After all, the statute also states that a motion for rehearing must be filed "within seven days

11

after the [single-subject] decision is made . . . ." § 1-40-107(1)(a)(I). On Petitioner's logic, if the Title Board initially sets a title for a proposed initiative and then reverses itself on a motion for rehearing from an objector (i.e., by concluding that the proposal includes multiple subjects), then the proponent of the initiative would be entitled to file a motion for rehearing challenging the decision. In other words, if we accept Petitioner's logic, we would be forced to conclude that any time the Title Board reverses itself on rehearing, a second rehearing would be permitted. This would require multiple rehearings before the Title Board with some frequency. In the 2017–2018 title setting "season," the Title Board reversed itself entirely on rehearing five times, and in the 2019–2020 season, this occurred on three occasions, two of which are at issue here. *See Initiative Filings, Agendas & Results*, Colo. Secretary of State, https://www.sos.state.co.us/pubs/elections/Initiatives/titleBoard/ [https://perma.cc/6F6S-RR4T] (reversing itself in 2017–2018 #70, #161, #162, #165, #166; 2019–2020 #127, #74, #75).

¶18     In fact, Petitioner's interpretation of the statute would require more than simply an additional hearing in the event the Title Board reverses itself entirely on rehearing. Petitioner's logic would require an additional rehearing *any time* the Title Board made *any change* to the title originally set. If the Board slightly modifies the original title based on arguments presented at the rehearing, then the modification results in new title language. On Petitioner's reading of the statute,

12

an objector to that new language would only be able to object—and thus must be permitted to object—after the language had been set. It is not hard to imagine the gamesmanship that could result if a group of objectors wanted to keep a proposed initiative away from the voters. Each time a modification is made at a Title Board rehearing, a new objector could file a motion for rehearing. And the risk of this possibility would be quite significant. During the 2017–2018 and 2019–2020 title setting seasons, the Title Board modified original titles on rehearing in thirty instances. *See id.* (modifying title on rehearing in 2017–2018 #4, #21–28, #50, #60, #62, #96, #109, #119, #121–123, #178–181; 2019–2020 #22, #24, #70, #71, #116, #120–122).

¶19 This interpretation would make the command in section 1-40-107(1)(c) that following a decision on rehearing, "no further motion for rehearing may be filed or considered by the title board" effectively meaningless. We have long held that "we should avoid a construction that renders any [statutory] provision superfluous or a nullity." *Indus. Claim Appeals Office v. Orth*, 965 P.2d 1246, 1254 (Colo. 1998). Petitioner's reading of the statute would do just that.

¶20 The more sensible reading of section 1-40-107(1)(a)(I) is that it sets out two kinds of objections a person might have to the Title Board's initial action—either that the single-subject decision was in error or that the title set was improper—and then provides that whichever of those two objections a person has, he must file a

13

motion for rehearing within seven days.  Section 1-40-107(1)(c) then directs that this rehearing process can happen only once.  This does not, of course, mean that multiple motions for rehearing are prohibited.  Multiple objectors, or an initiative proponent, may file motions for rehearing following the Title Board's initial decision.  Indeed, this happens regularly.  For example, 2019–2020 Proposed Initiative #3, "State Fiscal Policy," was the subject of four motions for rehearing.  And 2019–2020 Proposed Initiative #116, "Prohibition on Late Term Abortions," was the subject of two such motions, as was 2019–2020 Proposed Initiative #122, "Limits on Local Housing Growth."  In each instance, however, the Board held only a single rehearing, and it considered all motions for rehearing at that single proceeding.  After the Title Board had made a decision on "any motion for rehearing" filed objecting to its initial decision, its decision was final and "no further motion for rehearing [could] be filed or considered." § 1-40-107(1)(c).  This reading of the statutory provisions considers them "as a whole" and "give[s] consistent, harmonious, and sensible effect to all [their] parts."  *Mosley v. People*, 2017 CO 20, ¶ 16, 392 P.3d 1198, 1202.  Petitioner's reading does not.

¶21    Petitioner's final argument is that our reading of the statute leads to "absurd"results.  He notes that our interpretation of the statute would require anyone who might potentially have an objection to the Title Board's actions on rehearing—whether affirming or reversing its initial decision—to show up at the

14

rehearing and object on the spot to those actions. And he concludes that this result is absurd.

¶22 We agree that the statutory scheme anticipates that a potential objector will attend Title Board proceedings and voice any objections there. Section 1-40-107(2) specifically provides that registered electors other than those who filed motions for rehearing may "appear[] before the title board in support of or in opposition to a motion for rehearing" and gives those individuals a right to appeal the decision of the Title Board at rehearing to this court. In the context of the "special statutory proceeding[s]" in which the Title Board engages, this requirement is far from absurd. *Armstrong v. Davidson*, 10 P.3d 1278, 1282 (Colo. 2000). The Title Board "is a special statutory body created by the General Assembly for the purpose of implementing the constitutional right of initiative." *In re Title, Ballot Title & Submission Clause, "W.A.T.E.R.,"* 831 P.2d 1301, 1306 (Colo. 1992). Thus, "[f]ar from being designed either to further the adjudication of legal rights and duties or to implement a rulemaking function, the statutory provisions of [Title 1, Article 40] create a specific process and distinctive procedures applicable only to the unique functions of the Board." *Id.*

¶23 We reserve conclusions that statutory commands are "absurd" for "those instances where a literal interpretation of a statute would produce a result contrary to the expressed intent of the legislature." *Smith v. Exec. Custom Homes, Inc.,*

15

230 P.3d 1186, 1191 (Colo. 2010). Here, requiring potential objectors to be aware of the public meeting schedule for the Title Board and the issues being discussed either initially or on rehearing, and to appear at those Title Board proceedings to voice objections, is far from absurd.[1] Instead, it is entirely consistent with the "great emphasis on expediting the review process governing initiatives" that undergirds the tight timelines and strict deadlines that pervade that process.[2] *In re 1999–2000 #219*, 999 P.2d at 821.

¶24 Petitioner next argues that the interpretation we adopt today would lead to the "absurd" possibility that a Title Board matter would come to this court, we would reverse the decision of the Title Board, and there would then be no possibility of asking the Title Board for rehearing on its initial action after remand from this court. Of course, that question is not before us in this case and we express

---

[1] It bears mention that Petitioner's counsel was present at the rehearing on Proposed Initiatives #74 and #75 but voiced no objection to the titles set at that proceeding, although he was fully entitled to do so.

[2] Indeed, proponents of an initiative are required to appear at every Title Board proceeding related to the proposed initiative. § 1-40-106(4)(a). Thus, an interpretation permitting successive motions for rehearing that would tie proponents up in this process would be the more potentially unfair—if not absurd—outcome that would unduly burden "the rights of citizens to present petitions to the voters of Colorado." *In re 1999–2000 #219*, 999 P.2d at 821.

no opinion on it. We note, however, that it is far from "absurd" to imagine that in that instance the proper recourse might be a second appeal to this court.

## D. The Legislative History Supports Our Interpretation of Section 1-40-107(1)(c)

¶25 Although we see relatively little ambiguity in the language of section 1-40-107(1)(c), our confidence that we are interpreting the statute in a manner consistent with the General Assembly's purpose is bolstered by an examination of the legislative history of the 2012 amendment, which added the contested language. During hearings before the House State, Veterans, and Military Affairs Committee, several witnesses and members of the General Assembly discussed this provision in some detail. At these hearings, Former Deputy Secretary of State William Hobbs, also a former Title Board member, testified that the purpose of the proposed amendment was to:

> clarify that there's only one set of motions for rehearing. *After the Title Board first meets, everyone has seven days to file their motions for rehearing with all of their objections.* There would be simply one rehearing held by the Title Board. That would be the end of the process . . . . *This would clarify that there's just gonna [sic] be one round of rehearings. After that, as you know, the next step is that people who are dissatisfied with the Title Board go directly to the supreme court with their objections.*

Hearings on H.B. 1313 before the H. State, Veterans, and Military Affairs Comm., 68th Gen. Assemb., 2d Reg. Sess. (Mar. 14, 2012) (emphases added). And, in response to a question from Representative Lois Court about whether prohibiting

17

a second rehearing before the Title Board would limit an objector's ability to make particular arguments about a title, then-Deputy Attorney General David Blake, who had served on the Title Board, responded that an objector would not be "precluded in any way because they still have the appeal to the supreme court." *Id.*

¶26 This legislative history offers further support for our understanding of the plain language of the statute. We therefore conclude that a proposed initiative is subject to only one rehearing proceeding before the Title Board. The Board therefore was precluded from considering Petitioner's April 29 motion for rehearing.

### III. Conclusion

¶27 For the foregoing reasons, we affirm the Title Board's conclusion that it lacked jurisdiction to consider Petitioner's second motion for rehearing on Proposed Ballot Initiative 2019–2020 #74 and Proposed Ballot Initiative 2019–2020 #75.

**JUSTICE GABRIEL** dissents, and **CHIEF JUSTICE COATS** and **JUSTICE SAMOUR** join in the dissent.

18

JUSTICE GABRIEL, dissenting.

¶28 The majority concludes that under section 1-40-107(1)(c), C.R.S. (2019), if any party to a ballot title proceeding files a motion for rehearing, then no other party may file a motion for rehearing if the Title Board changes a prior ruling and for the first time enters a ruling adverse to that other party. Maj. op. ¶¶ 7, 26. The majority bases its conclusion on the text of section 1-40-107(1)(c) and on the fact that ballot title proceedings are subject to stringent time restraints and have their own procedures. *Id.* at ¶¶ 11, 22.

¶29 Because I do not believe that the majority's statutory construction is supported by the text of section 1-40-107 when read as a whole, and because the majority's construction produces absurd results, I respectfully dissent.

## I. Factual Background

¶30 Proponents Monica R. Colbert and Juliet Sebold proposed Initiative 2019–2020 #74 and Initiative 2019–2020 #75, but the Title Board refused to set titles, finding that the proposed initiatives violated the single subject rule. Proponents then moved for rehearing, and the Board subsequently reversed course and set titles and submission clauses for the proposed initiatives.

¶31 Thereafter, petitioner Kenneth Nova, having now, for the first time, been aggrieved by the Board's action, filed a motion for rehearing, asserting that the Board had incorrectly decided the single subject issue and that its titles were

1

misleading to voters. The Board, however, refused to consider petitioner's motion, concluding that the Board lacked jurisdiction to consider a second motion for rehearing (albeit from a different party and based on a different ruling than the prior motion). Petitioner now appeals that ruling, and the majority affirms, agreeing that the Title Board lacked jurisdiction.

## II. Analysis

¶32 I begin by setting forth our standard of review and the pertinent principles of statutory construction. I then address the statutory provisions at issue and explain why I believe the majority's construction is inconsistent with the statutory text and leads to absurd results.

### A. Standard of Review and Principles of Statutory Construction

¶33 We review issues of statutory interpretation de novo. *McCoy v. People*, 2019 CO 44, ¶ 37, 442 P.3d 379, 389. In construing a statute, we primarily seek to ascertain and give effect to the legislature's intent. *Id.* To do this, we look first to the language of the statute, giving its words and phrases their plain and ordinary meanings. *Id.* We read statutory words and phrases in context, and we construe them according to the rules of grammar and common usage. *Id.*

¶34 We must also endeavor to effectuate the purpose of the legislative scheme. *Id.* at ¶ 38, 442 P.3d at 389. In doing so, we read the scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts, and we avoid

constructions that would render any words or phrases superfluous or lead to illogical or absurd results. *Id.* If the statute is unambiguous, then we need look no further. *Id.* If, however, the statute is ambiguous, then we may consider other aids to statutory construction, including the consequences of a given construction, the end to be achieved by the statute, and the statute's legislative history. *Id.* A statute is ambiguous when it is reasonably susceptible of multiple interpretations. *Id.*

## B. Section 1-40-107

¶35 Section 1-40-107(1)(c) provides, in pertinent part, "The decision of the title board on any motion for rehearing shall be final, except as provided in subsection (2) of this section [relating to supreme court review], and no further motion for rehearing may be filed or considered by the title board."

¶36 If the phrase "and no further motion for rehearing may be filed or considered by the title board" is read in the abstract, divorced from the rest of section 1-40-107 and without considering the statutory context, it could possibly be deemed ambiguous. This is because, read out of context, the phrase could arguably be interpreted to mean either that no further motion for rehearing may be made by the person who filed the initial motion for rehearing or that no further motion for rehearing may be made by anyone.

¶37 As set forth above, however, we cannot read statutory provisions in the abstract. Rather, we must read the statutory scheme as a whole, giving consistent,

3

harmonious, and sensible effect to all of its parts. *McCoy*, ¶ 38, 442 P.3d at 389. When I do that here, it becomes clear that the above-quoted language of section 1-40-107(1)(c) refers to the party who filed the initial motion for rehearing and only bars *that* party from filing successive motions for rehearing.

¶38 As pertinent here, section 1-40-107(1)(a)(I) provides:

> Any person presenting an initiative petition or any registered elector who is not satisfied with a decision of the title board with respect to whether a petition contains more than a single subject pursuant to section 1-40-106.5, or who is not satisfied with the titles and submission clause provided by the title board and who claims that they are unfair or that they do not fairly express the true meaning and intent of the proposed state law or constitutional amendment may file a motion for a rehearing with the secretary of state within seven days after the decision is made or the titles and submission clause are set.

¶39 Under this provision, a person presenting an initiative petition or a registered elector may file a motion for rehearing in two circumstances: (1) the person presenting the initiative or the registered elector is not satisfied with a decision of the Title Board with respect to whether a petition contains more than a single subject or (2) he or she is not satisfied with the titles and submission clause provided by the Title Board and he or she claims that they are unfair or do not fairly express the true meaning and intent of the proposed initiative.

¶40 Moreover, under the express terms of this provision, one need not—indeed, cannot—file a motion for rehearing until he or she is aggrieved in either of the two ways set forth in the statute.

4

¶41 In my view, reading the above-quoted portion of section 1-40-107(1)(c) together with section 1-40-107(1)(a)(I) and in the context of the statute as a whole makes clear that the last sentence of section 1-40-107(1)(c) applies only to a motion for rehearing filed by a party who was aggrieved in either of the two ways set forth in section 1-40-107(1)(a)(I) and precludes only that party from filing a further motion for rehearing. I reach this conclusion for two reasons.

¶42 First, such a construction is consistent with the express language of section 1-40-107(1)(c) because (1) only a party aggrieved in one of the two ways set forth in section 1-40-107(1)(a)(I) may file a motion for rehearing and (2) the phrase "further motion for rehearing" as used in section 1-40-107(1)(c) plainly refers back to the motion for rehearing that the aggrieved party filed and that the Board decided. A party in petitioner's position is not precluded from filing a motion for rehearing because it would be his or her first motion and, by definition, it would not be a "further" motion.

¶43 Second, this reading makes logical sense. No statutory provision requires a party to seek a rehearing when the party *agrees* with the Title Board's decision, and requiring a party to do so is inconsistent with the common understanding of a motion for rehearing: when a party prevails, that party generally has nothing for the Board to reconsider.

¶44 In reaching my conclusion, I am not persuaded by the majority's construction of the statute to mean that a proposed initiative is subject to only one rehearing proceeding before the Title Board. Maj. op. ¶ 26. The majority correctly begins its opinion by noting that we must decide whether the pertinent statute means what it says. *Id.* at ¶ 1. The majority's construction, however, interprets the statute to mean something that it does not say. Specifically, as noted above, the statute does not speak in terms of rehearing proceedings; it says, in pertinent part, "[N]o further *motion for rehearing* may be filed or considered by the title board," § 1-40-107(1)(c) (emphasis added), and we must take that statutory language as the legislature has provided it to us.

¶45 Nor am I persuaded by the majority's assertion that under petitioner's (and my) logic, a rehearing would be permitted any time the Title Board makes any change to the title originally set. Maj. op. ¶ 18. Petitioner has made no such argument, nor do I agree that petitioner's logic stretches that far. The issue before us is whether the pertinent statutes allow a party to file a motion for rehearing when the Title Board grants another party's motion for rehearing and reverses its own prior determination. Petitioner contends that a party aggrieved by such a change of course should have the opportunity to move for a rehearing. I agree with that.

6

¶46 And I am unpersuaded by the majority's reliance on legislative history here. *See id.* at ¶¶ 25–26. Beside the fact that I perceive no ambiguity in the pertinent provisions when read as a whole, I see nothing in the legislative history indicating that the legislators considered or intended to address the unusual scenario now before us.

¶47 Notwithstanding the foregoing, the majority appears to suggest that section 1-40-107(1)(c) requires a party who has prevailed before the Title Board to appear at the proceedings on *another* party's motion for rehearing and to register an oral objection if the Title Board happens to change its mind and reverse a previous ruling. *Id.* at ¶¶ 4, 10, 23. Thereafter, the party who registered the oral objection can petition this court for review, even though he or she was given no opportunity to brief his or her objection to the title ultimately set by the Board, which may not have been the precise title for which the party moving for rehearing was advocating.

¶48 I see nothing in section 1-40-107 that requires such an unusual procedure, and I am unaware of a similar procedure in any other area of law.

¶49 Moreover, in my view, such a procedure deprives a party in petitioner's position of the motion for rehearing to which section 1-40-107(1)(a)(I) expressly entitles him or her. We, however, are not at liberty to disregard rights granted by our legislature.

7

¶50    And such a procedure might well result in parties briefing arguments in this court that they were never afforded an opportunity to brief below. Again, I perceive no basis in law for so unusual a procedure, which strikes me as inconsistent with this court's proper role as an appellate court in cases like this one.

¶51    Although the majority appears to premise the unique procedure that it adopts on the need for ballot title cases to proceed expeditiously and on its assertion that such cases are subject to their own procedures, *see id.* at ¶¶ 11, 22, I am not persuaded that the need for prompt consideration of these cases, which I readily acknowledge, can override section 1-40-107's express language. Nor do I agree that ballot title cases are so radically different from every other type of proceeding of which I am aware. The majority cites no authority to support its view that the legislature intended to create a regime that (1) denies parties a full and fair opportunity to articulate their positions in the tribunal of first instance and (2) then not only allows, but also requires, them to present their arguments for the first time in an appellate court. Nor have I seen any such authority.

¶52    I likewise disagree that my interpretation of the statute, which gives effect to all of the statute's provisions, would result in any significant delay in the proceedings, much less delay warranting penalizing parties like petitioner here,

which I believe the majority opinion does. I reach this conclusion for several reasons.

¶53 First, any delay in a case like this cannot be attributed to a party like petitioner. Rather, any such delay is attributable to the unusual fact that the Title Board changed its mind with respect to its initial ruling.

¶54 Second, I am unwilling to fault petitioner for not complying with the "orally-object-if-they-change-their-mind" procedure that the majority adopts today, particularly given the apparent lack of precedent in *any* setting supporting such a procedure.

¶55 Finally, in my view, the statutory construction that the majority adopts today leads to absurd results, and for that reason as well, I believe that the majority errs in adopting such a construction. *See McCoy*, ¶ 38, 442 P.3d at 389.

¶56 Were a tribunal to apply the language of section 1-40-107(1)(c) in the strict, literal, and, in my view, out-of-context way that the majority seems to do, *see* maj. op. ¶ 10, a party would not be permitted to file a motion for rehearing if another party happens to file such a motion first, thereby setting up a race to file a motion for rehearing in the not-uncommon scenario in which multiple parties are dissatisfied with a title set by the Board.

¶57 Perhaps recognizing that the consequences that flow from such a strict, literal construction would be absurd, the majority opines that multiple motions for

9

rehearing are actually permissible following the Title Board's initial decision because under the statute, only successive rehearing proceedings are barred. *Id.* at ¶¶ 20, 26. As noted above, however, the statute does not say that. It does not speak in terms of rehearing proceedings; it speaks in terms of motions for rehearing. § 1-40-107(1)(c).

¶58 Nor, under the majority's construction, would a party be entitled to move for rehearing in the not-unusual circumstance in which the Board sets a title pursuant to a remand order following a successful appeal to this court. In my view, and contrary to that of the majority, a party should not be required to anticipate a title that the Title Board might someday set and object to such a hypothetical title if any party moves for rehearing in an earlier proceeding in a case. The law does not (and cannot) require such prescience from a party, and as a result, I believe that such a requirement would be absurd.

### III. Conclusion

¶59 Construing section 1-40-107(1)(c), the majority concludes that in any ballot title proceeding, there will be one and only one rehearing proceeding, regardless of who makes that motion, when he or she does so, or what the Title Board decides. For the reasons discussed above, I believe that this construction is inconsistent with the text of section 1-40-107 when read as a whole and produces absurd results. Accordingly, I would not adopt such a construction but rather would

10

conclude that section 1-40-107(1)(c) precludes only successive motions for rehearing by a single party. Such a construction, in contrast with that adopted by the majority, is consistent with the express statutory language of section 1-40-107, gives meaning to all of that statute's provisions, and avoids absurd results.

¶60 I therefore would reverse the Title Board's order concluding that it lacked jurisdiction over petitioner's motion for rehearing, and I would remand this case to the Title Board with instructions that the Board consider on the merits petitioner's motion for rehearing.

¶61 For these reasons, I respectfully dissent.

I am authorized to state that CHIEF JUSTICE COATS and JUSTICE SAMOUR join in this dissent.